2007 ME 33

**STATE of Maine**

v.

**Raymond SAMSON.**

Supreme Judicial Court of Maine.

Argued: Jan. 18, 2007.
Decided: Feb. 27, 2007.

Norman R. Croteau, District Attorney, Deborah Potter Cashman, Asst. Dist. Atty. (orally), Carlos Diaz, Asst. Attorney General, Auburn, for State.

Leonard I. Sharon (orally), Sharon, Leary & DeTroy, Auburn, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, LEVY, and SILVER, JJ.

ALEXANDER, J.

[¶ 1] Raymond Samson appeals from judgments of conviction entered in the Superior Court (Androscoggin County, *Gorman, J.*) for eighteen crimes: gross sexual assault (Class A), 17–A M.R.S.A. § 253(1)(B), (4) (Supp.2002);[1] two counts of gross sexual assault (Class A), 17–A M.R.S.A. § 253(1)(B) (Supp.2003);[2] gross sexual assault (Class B), 17–A M.R.S. § 253(2)(D) (2006); six counts of sexual exploitation of a minor (Class B), 17 M.R.S.A. § 2922(1)(A), (2) (1983 & Supp. 2003);[3] sexual abuse of a minor (Class C), 17–A M.R.S. § 254(1)(A–2) (2006); unlawful sexual contact (Class C), 17–A M.R.S. § 255–A(1)(E) (2006); unlawful sexual contact (Class D), 17–A M.R.S.A. § 255(1)(A), (2) (Supp.2002);[4] unlawful sexual contact (Class D), 17–A M.R.S. § 255–A(1)(A) (2006); visual sexual aggression against a child (Class D), 17–A M.R.S. § 256(1) (2005);[5] unlawful sexual touching (Class D), 17–A M.R.S. § 260(1)(C) (2006); falsifying physical evidence (Class D), 17–A M.R.S. § 455(1)(A), (2) (2006); and violation of a condition of release (Class E), 15 M.R.S. § 1092(1)(A) (2006). Samson argues that the court erred in denying his motion to suppress nude or sexual images of the minor victims because the images

1. Title 17–A M.R.S.A. § 253(1)(B) has since been amended. P.L. 2003, ch. 711, § B–2 (effective July 30, 2004) (codified at 17–A M.R.S. § 253(1)(B) (2006)). Subsection (4) has since been repealed. P.L. 2001, ch. 383, § 18 (effective Jan. 31, 2003).

2. Title 17–A M.R.S.A. § 253(1)(B) has since been amended. P.L. 2003, ch. 711, § B–2 (effective July 30, 2004) (codified at 17–A M.R.S. § 253(1)(B)).

3. Title 17 M.R.S.A. § 2922 has since been repealed and replaced. P.L. 2003, ch. 711, §§ B–1, B–12 (effective July 30, 2004) (codified at 17–A M.R.S. § 282 (2006)).

4. Title 17–A M.R.S.A. § 255 was repealed and replaced with 17–A M.R.S. § 255–A (2006), P.L. 2001, ch. 383, §§ 22, 23 (effective Jan. 31, 2003). Section 255–A has since been amended. P.L. 2005, ch. 450, §§ 1, 2 (effective Sept. 17, 2005).

5. Title 17–A M.R.S.A. § 256 has since been amended. P.L. 2005, ch. 655, § 1 (effective Aug. 23, 2006) (codified at 17–A M.R.S. § 256 (2006)).

were obtained through search warrants that were not supported by affidavits that sufficiently identified the places to be searched. We affirm the judgments.

## I. CASE HISTORY

[¶ 2] On April 22, 2005, a detective with the Lewiston Police Department, who was also a member of the Maine Computer Crimes Task Force, applied for a warrant to search 297 and 299 Webster Street in Lewiston, described as Samson's "home" and his "residence," respectively.

[¶ 3] The detective asserted the following facts in the affidavit supporting the warrant request. The detective had recently interviewed four people who reported that Samson had taken nude pictures of three of them when they were under the age of eighteen. One of the victims stated that he had known Samson for a few years and during that time, Samson had offered him gifts in return for engaging in sexual acts and allowing Samson to take photographs. Samson also showed him sexually explicit images of other young males. While playing solitaire on Samson's computer one day, the victim found a file containing nude pictures of his ten-year-old brother. He moved the images to the recycle bin, but never deleted the files. The next day, Samson invited the victim over to talk and asked him to engage in a sexual act. The victim left immediately.

[¶ 4] The other two victims, another male and a female, had similar experiences with Samson. Samson offered them gifts and allowed them to stay "in one of his two residences" on the condition that they permitted him to take nude pictures of them. The male stated that he had met Samson when he was fourteen or fifteen years old and that Samson had told him that he would sell the pictures to a magazine distributed out of the Netherlands. He also awoke one day to Samson performing oral sex on him. He moved in and out of Samson's residence three times over the next two years. During one of his stays at Samson's residence, his girlfriend, the female victim, had also lived with him. The female victim confirmed her boyfriend's statement and gave the detective a copy of a photograph that Samson had given her depicting her and her boyfriend in the nude.

[¶ 5] All of the victims stated that Samson had a laptop and a desktop computer, a large number of burnable compact discs, cameras, and at least one digital video camera. The detective asserted in the affidavit that based on his training, knowledge, and experience, communications are often stored on computers or disk drives, and can be retrieved from the computer even after being deleted or erased. He also averred that persons who engage or attempt to engage in sexual acts with minors often collect sexually explicit material.

[¶ 6] Based on these facts, and his training and experience, the detective asserted his belief that computers and other electronic storage media located at 297 and 299 Webster Street in Lewiston were used for possessing and producing sexually explicit digital images of minors. A justice of the peace issued the search warrant. The police executed the warrant and recovered numerous photographs of the victims exposing their genitals or engaging in sexual acts.

[¶ 7] After the April 22 search, the police learned from one of the initial witnesses and another male, that Samson may have destroyed some of the evidence and buried it in his backyard. A Lewiston police officer, who was visiting Samson to assure that he was abiding by his bail conditions, was able to confirm that there was a recently excavated area in Samson's yard. The detective attested to this information in a second affidavit in support of a warrant to search the curtilage of 297 Webster

Street. The police executed this warrant on June 1, 2005, and discovered more compact discs.

[¶ 8] Samson was arrested and charged with twenty counts of various crimes, to which he pleaded not guilty. Before trial, Samson filed a motion to suppress the evidence seized as a result of the two warrants. At the hearing on the motion, Samson argued that the first seizure violated his Fourth Amendment rights because the affidavit contained nothing to connect the evidence to either one of his residences, and that the second seizure was illegal because it resulted from evidence seized during the first illegal search. The court denied the motion by order, stating:

> With hindsight, the court notes that the better practice would have involved a more detailed description of the specific address where acts were alleged to have occurred, and/or where computers or contraband might be found. In addition, the officer should have explained which building Mr. Samson actually lived in, why he believed evidence of a crime might be found in both buildings, and just how much of each building Mr. Samson controlled.
> Despite [the affidavit's] shortcomings, however ... the magistrate correctly concluded that there was probable cause to search both buildings.

[¶ 9] At trial, several victims identified and described the events depicted in the photographs or recordings, which the court admitted as evidence. The investigating detective also identified the admitted photographs and recordings as those he found at Samson's residence. At the end of the trial, the State dismissed counts nineteen and twenty of the indictment. The jury returned guilty verdicts against Samson on the remaining eighteen counts. Utilizing consecutive sentencing, 17–A M.R.S. § 1256(2)(D) (2006), the court sentenced

Samson to forty-two years in prison, to be followed by six years of probation, and ordered him to register as a sex offender. This appeal followed.

## II. ANALYSIS

[¶ 10] Samson contends that the court erred in denying his motion to suppress the evidence obtained as a result of both the April 22 and June 1 searches. While Samson concedes that the facts alleged in the first warrant were sufficient to support a finding of probable cause that a crime was committed, he argues that the warrant was constitutionally deficient because the affidavit failed to connect the criminal acts to either one of his adjoining residences. Samson also asserts that the evidence obtained from the June 1 search should have been suppressed because that warrant relied on information gained from the April 22 search, and the second warrant could not have stood independent from the tainted information.

### A. Denial of the Motion to Suppress Evidence Found on April 22

[¶ 11] When we review a denial of a motion to suppress evidence obtained by execution of a search warrant, we review directly the finding of probable cause made by the judicial officer who issued the warrant, affording that finding great deference. *State v. Wright*, 2006 ME 13, ¶ 8, 890 A.2d 703, 705. When determining whether probable cause exists, the judicial officer must rely on "factual and practical considerations of everyday life on which reasonable and prudent [persons], not legal technicians, act." *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (quotation marks omitted). We will read the affidavit in support of the warrant in a positive light and consider all reasonable inferences that may be drawn

from information in the affidavit. *Wright,* 2006 ME 13, ¶ 8, 890 A.2d at 705.

[¶ 12] Probable cause exists when, based on the totality of the circumstances, "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* (quotation marks omitted); *see also Gates,* 462 U.S. at 238, 103 S.Ct. 2317. The Warrant Clause of the Fourth Amendment requires a particular description of the place to be searched to prevent "general searches." *Maryland v. Garrison,* 480 U.S. 79, 84, 107 S.Ct. 1013, 94 L.Ed.2d 72 (1987); *see also United States v. Young,* 877 F.2d 1099, 1105 (1st Cir.1989). "By limiting the authorization to search to the specific areas ... the requirement ensures that the search will be carefully tailored to its justifications, and will not take on the character of the wide-ranging exploratory searches the Framers intended to prohibit." *Garrison,* 480 U.S. at 84, 107 S.Ct. 1013.

[¶ 13] A warrant authorizing a search of more than one building will not fail for lack of particularity of location if the affidavit sets forth probable cause to search each location. *See generally* 2 WAYNE R. LAFAVE, SEARCH & SEIZURE § 4.5(c) at 588–92 (4th ed. 2004); *United States v. Pitts,* 173 F.3d 677, 680 (8th Cir.1999).[6] Courts are more likely to uphold such warrants where the buildings are adjacent to each other and under the same ownership and control. *See, e.g., United States v. Whitten,* 706 F.2d 1000, 1008 (9th Cir.1983), *cert. denied,* 465 U.S. 1100, 104 S.Ct. 1593, 80 L.Ed.2d 125 (1984) ("[A] warrant may authorize a search of an entire street address while reciting probable cause as to only a portion of the premises if they are occupied in common rather than individually....").[7]

[¶ 14] Because the justice of the peace could reasonably infer that Samson had control over his adjacent buildings described as his "home" and his "residence," the affidavit contained a sufficiently particularized description of the location to be searched, subject to a determination that the affidavit also established probable cause that the police would find evidence of the crimes in both buildings.

[¶ 15] To meet the standard for probable cause, the warrant affidavit must set forth some nexus between the evidence to be seized and the locations to be searched. *See United States v. Feliz,* 182 F.3d 82, 86–88 (1st Cir.1999); *see also State v. Basu,* 2005 ME 74, ¶ 16, 875 A.2d 686, 691. The nexus "need not, and often will not, rest on direct observation, but rather can be inferred from the type of crime, the nature of the items sought, the

6. *See also United States v. Baldyga,* 233 F.3d 674, 683 (1st Cir.2000), *cert. denied,* 534 U.S. 871, 122 S.Ct. 164, 151 L.Ed.2d 112 (2001) (upholding warrant for residence and any " 'separate storage areas, houses, garages, unattached buildings and vehicles on the premises' "); *cf. State v. Lehman,* 1999 ME 124, ¶ 11, 736 A.2d 256, 261 (holding that warrant to search entire home for computer equipment was not overly broad because of the mobility of such equipment and because the victim stated that the acts occurred throughout the premises).

7. In *State v. Duane,* 100 Me. 447, 448–49, 62 A. 80, 80–81 (1905), we struck down a "general warrant" search of the defendant's residence and the two neighboring residences, which were occupied by persons other than the defendant. *See also People v. Martin,* 271 Mich.App. 280, 721 N.W.2d 815, 834–35 (2006) (affirming warrant for search of defendant's residence, which could have been residence behind the bar or his other home address); *Commonwealth v. LaPlante,* 416 Mass. 433, 622 N.E.2d 1357, 1361 (1993) (same for search of multi-unit building where defendant had " 'sufficient access and control over the entire structure' "); *People v. Easley,* 34 Cal.3d 858, 196 Cal.Rptr. 309, 671 P.2d 813, 820 (1983) (same for search of defendant's house and apartment).

extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime]." *Feliz*, 182 F.3d at 88 (quotation marks omitted).

[¶ 16] A law enforcement officer's opinion that a person engaged in the creation and collection of child pornography through the use of computers and other electronic devices is likely to keep evidence of such use in his or her home, may be sufficient to establish a nexus between the evidence sought and the suspect's residence. *Cf. Wright*, 2006 ME 13, ¶ 10, 890 A.2d at 706 (noting "those who deal in pornography treat these materials as valuable commodities, sometimes even regarding them as collections, and retain them in secure but available places for extended periods of time" (quotation marks omitted)). Because of the illicit nature of collecting and producing child pornography, evidence of such acts is likely to be "tied to a place of privacy, seclusion, and high-speed Internet connectivity (e.g. a home or office)." *United States v. Wagers*, 452 F.3d 534, 540 (6th Cir.2006).

[¶ 17] Accordingly, the detective's opinion that evidence of sexually explicit images would likely be found in Samson's home, along with the victims' statements included in the affidavit, established a nexus because a reasonable person could conclude that there would be evidence of wrongdoing found in both Samson's "home" and his "residence." [8] The victims identified at least one of the buildings as the location where the suspected criminal activity occurred. Samson had invited two of the victims to stay in "one of his two residences." The victims had also seen Samson's computers and other electronic media storage devices while in at least one of the residences, and one of computers contained sexually explicit images of one victim's brother.

[¶ 18] Here, as the trial court observed, it would have been better practice had the detective clarified in the affidavit how the events were connected to each of Samson's residences, described why he believed the computers and other electronics might be found in both homes, and articulated that Samson had control over both residences. However, the evidence and instrumentalities sought were easily transportable, the residences to be searched were close enough to facilitate transfer of evidence from one place to the other, and the suspect was alleged to have owned both buildings. A common sense reading of the affidavit supports the inference that the police were likely to find evidence of the collection and production of sexually explicit images of minors in both buildings. Thus, when viewed under the totality of the circumstances, the affidavit sets forth sufficient probable cause to justify the searches of both residences. Therefore,

---

8. In *United States v. Feliz,* the First Circuit cautioned against any conclusion that all searches can be based on the likelihood that a suspect would conceal evidence in his or her residence. 182 F.3d 82, 88 (1st Cir.1999). The court noted:

    All factors must be weighed in each case in order to assess the reasonableness of inferring that evidence of the crime can be found at the suspect's home. We say only that interpreting a search warrant affidavit in the proper commonsense and realistic fashion may result in the inference of prob-

able cause to believe that criminal objects are located in a particular place, such as a suspect's residence, to which they have not been tied by direct evidence.

*Id.* (citation and quotation marks omitted); *see also United States v. Guay*, No. 01–54–P–H, 2001 WL 1571460, at *10, 2001 U.S. Dist. Lexis 20508, at *25 (D.Me. Dec. 11, 2001) (noting that an officer's "opinion based upon his knowledge of the behavior and practices of child molesters, by itself, does not furnish the requisite nexus between the criminal activity and the place to be searched").

we affirm the trial court's denial of Samson's first motion to suppress.

## B. Denial of the Motion to Suppress Evidence Found on June 1

[¶ 19] Because probable cause existed for the April 22 search of both residences, we need not reach Samson's second argument that the evidence obtained as a result of the June 1 search should have been suppressed because evidence was improperly obtained in the April 22 search.

The entry is:

Judgment affirmed.