MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:    2016 ME 185
Docket:      Pen-15-596
Argued:      September 15, 2016
Decided:     December 22, 2016

Panel:       SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

OSCAR NUNEZ

HUMPHREY, J.

[¶1]   Oscar Nunez appeals from a judgment entered in the Unified Criminal Docket (Penobscot County, *Anderson, J.*) convicting him of one count of arson, 17-A M.R.S. § 802(1)(A) (2015), and two counts of criminal threatening, 17-A M.R.S. §§ 209(1), 1252(4) (2015), pursuant to a conditional guilty plea through which he reserved the right to appeal the denial of his suppression motion.   Nunez argues that, because it was objectively unreasonable for an officer to believe the search warrant established probable cause, the court erred in applying the good faith exception to the exclusionary

2

rule to deny his motion. We conclude the warrant was supported by probable cause and affirm.[1]

## I. BACKGROUND

[¶2] On July 22, 2012, Special Agent Lori Renzullo of the Maine Drug Enforcement Agency (MDEA) applied for a warrant to search the alleged home of Oscar Nunez at 45 West Side Drive on Verona Island. Renzullo's supporting affidavit alleged the following facts.

[¶3] Earlier that day, an unidentified individual fired multiple .380 caliber rounds at and set fire to a residence in Orrington belonging to David Ireland. When law enforcement officers responded, they observed marijuana plants on the porch and in the basement, and, with Ireland's consent, they searched the property. An investigator found a substance that Ireland admitted was heroin and contacted Renzullo, who arrived at Ireland's residence and observed light brown powder consistent with heroin and packaging consistent with crack cocaine.

[¶4] Ireland told Renzullo that a few months earlier, he worked for an individual known as "Shorty," whose real name Ireland believed to be Oscar

---

[1] Because we conclude the warrant was supported by probable cause, we need not reach the good faith exception argument raised in this appeal. *See State v. Estabrook*, 2007 ME 130, ¶¶ 1, 9, 932 A.2d 549.

Nunez. Ireland stated that Nunez[2] was a drug dealer who sold crack cocaine and that Ireland had purchased crack from Nunez in the past. He told Renzullo that he worked for Nunez as a driver, but quit after only a week because he was scared. According to Ireland, this upset Nunez, who thereafter accused Ireland of stealing customers, attempted to run Ireland off the road with his car, pepper sprayed Ireland's vehicle, and once put a gun to Ireland's head in front of his children.

[¶5] Renzullo also spoke with a man who identified himself as Rolando Cabrera. Cabrera said that he and Ireland were friends and that he was present during the shooting and arson at Ireland's residence. Cabrera told Renzullo that he had mutual acquaintances with Shorty, knew him from New York, and that Shorty's real name was Oscar Nunez. Cabrera stated Nunez used to live at 117 Union Street in Brewer, but had recently moved to Verona Island. According to Cabrera, before moving to Verona Island, Nunez sold crack on Ohio Street in Bangor as a member of a "Dominican gang" from the end of 2010 to the fall of 2011. After the other gang members were arrested, Nunez returned to Bangor and assumed control of the crack business.

---

[2] During this exchange, Ireland referred to Nunez by his apparent street name, "Shorty."

4

[¶6]  Renzullo averred that Cabrera took two investigators to 45 West Side Drive on Verona Island and identified the home as Nunez's current residence.[3]  Cabrera told the investigators that Nunez usually parked a Toyota in the driveway and that Nunez was not home because there was no vehicle.

[¶7]  In the affidavit, Renzullo also stated that, with the foregoing information, she obtained a search warrant for Ireland's residence. Investigators searched the residence again and found additional drugs and firearms.  Renzullo then spoke to Ireland a second time about his dealings with Nunez.

[¶8]  During the second conversation, Ireland told Renzullo that he drove Nunez around for about a week in vehicles Nunez rented from a Toyota dealership.  Ireland stated Nunez had also wanted him to sell drugs and gave him ten bags of crack and heroin.  Ireland maintained that he never sold any of the drugs, that Nunez threatened Ireland with a gun after Ireland used some of the heroin, and that Nunez asked Ireland to wire sums of money ranging from $500 to $1,500 to individuals in New York on ten or twelve occasions

---

[3]  At the suppression hearing, testimony revealed that in fact another individual, who was associated with Cabrera, took investigators to the Verona Island residence.  Renzullo believed it was Cabrera who took the other agents to the Verona Island residence at the time she wrote the warrant affidavit.

over several months.  Ireland also told Renzullo he saw Nunez carry twenty to forty bags of crack "in his crotch" on several occasions.

[¶9]  Renzullo further averred that she had interviewed a cooperating defendant (CD) on July 17, 2012.  The CD, who was arrested on a drug-related offense, was known to Renzullo and had provided the MDEA reliable information in the past.  The CD informed Renzullo that a "new group of Dominicans" was operating in the area with operations believed to be based in Brewer because Shorty arranged for drug buys to occur on School Street in Brewer.  The CD had purchased crack from Shorty five to ten times in the previous month and gave Renzullo the telephone number to place a crack order.  The CD thought the voice in the number's voicemail was Shorty's, but did not know for sure.  The voicemail message informed the caller: "If you are wearing a wire or you're snitching, I'll blow your brains out."

[¶10]  Renzullo concluded with the assertion that based upon her experience, education, training, and study,[4] it is common for those involved in drug trafficking to keep evidence of their criminal activity at their residences.

[¶11]  On July 22, 2012, the District Court (Ellsworth, *Mallonee, J.*) issued a warrant authorizing officers to search Oscar Nunez's residence at

---

[4] Renzullo averred that she had been a law enforcement officer for over ten years, and a special agent with the MDEA for almost three years.

6

45 West Side Drive on Verona Island. The court concluded that based on the Renzullo affidavit, there was probable cause to search for and seize any drugs, drug paraphernalia, and related evidence connected to the drug dealing business.

[¶12] State Fire Marshal Investigator Stewart Jacobs and several MDEA agents executed the search warrant at 45 West Side Drive.[5] At the property, Jacobs saw a six-pack holder of "Molotov cocktails" and a .380 caliber handgun. Jacobs then applied for and obtained a second warrant for the Verona Island property, which attached and incorporated the Renzullo affidavit, to seize the containers and gun as evidence related to the arson at Ireland's residence. The evidence seized pursuant to this second warrant is the subject of the motion to suppress at issue here.

[¶13] On January 30, 2013, Nunez was charged by indictment with four counts: aggravated attempted murder (Class A), 17-A M.R.S. § 152-A(1)(A) (2015); arson (Class A), 17-A M.R.S. § 802(1)(A); and two counts of criminal threatening (Class C), 17-A M.R.S. §§ 209(1), 1252(4). On April 2, 2013, Nunez filed a motion to suppress the evidence seized pursuant to the second warrant

---

[5] These facts are drawn from the trial court's findings following the hearing on Nunez's motion to suppress and are based on competent evidence contained in the suppression record. *See State v. Lovett*, 2015 ME 7, ¶ 3, 109 A.3d 1135; *see also State v. Arbour*, 2016 ME 126, ¶ 8, 146 A.3d 1106.

to search the Verona Island property, including the fuel containers, Molotov cocktails, and the gun. Nunez contended that the second search warrant was tainted by the unlawful initial search relying on the Renzullo affidavit, which failed to supply probable cause that evidence of illegal drug activity would be found at the property.

[¶14] On September 30, 2013, the Superior Court (*Anderson, J.*) held a hearing on the motion to suppress. Special Agent Renzullo and State Fire Marshal Investigator Jacobs testified. The court concluded that the Renzullo affidavit failed to establish probable cause to search the Verona Island property, and emphasized two facts. First, the court noted, "although there is reason to believe that Mr. Nunez sold drugs and had provided drugs to David Ireland within the last few months, none of that activity is linked directly to the Verona Island residence." Second, Renzullo failed to state how the individual who led officers to the Verona Island address knew Nunez lived there. The court ultimately concluded that the evidence seized pursuant to the second warrant was nonetheless admissible because Jacobs acted in good faith in applying for and executing the second warrant. The court therefore denied the motion to suppress by written order dated December 3, 2013.

[¶15]  On September 11, 2014, the State dismissed the attempted murder charge and Nunez entered conditional guilty pleas to the remaining charges.  On November 12, 2015, the court sentenced Nunez to twenty years of imprisonment on the arson charge, with all but eight years suspended, and four years of probation, and four years of imprisonment on both criminal threatening charges, to be served concurrently with the arson sentence.[6] Nunez timely appealed from the judgment of conviction.  *See* 15 M.R.S. § 2115 (2015); M.R. App. P. 2.

## II.  DISCUSSION

### A.    Issue on Appeal

[¶16]  The court found that the affidavit in support of the first warrant was insufficient to establish probable cause to search Nunez's residence, but concluded that the evidence was nonetheless admissible pursuant to the good faith exception.  The State did not appeal from, and does not challenge, the conclusion that the Renzullo affidavit failed to generate probable cause to conduct the initial search.  Rather, in this appeal, the parties have only briefed and argued whether the good faith exception applies to the seizure of

---

[6] Nunez faced federal charges, delaying his sentencing in this matter.  At the Rule 11 hearing, the court accepted the conditional guilty plea and continued sentencing until after the resolution of the federal case.

evidence pursuant to the second warrant.[7]  *See United States v. Leon*, 468 U.S. 897, 923-24 (1984).

[¶17]  Notwithstanding the parties' focus on good faith, we first review whether the initial warrant was supported by probable cause.  *See State v. Estabrook*, 2007 ME 130, ¶¶ 1, 9, 932 A.2d 549 (affirming trial court's denial of a motion to suppress on the ground that the warrant affidavit was supported by probable cause and declining to address the good faith exception); *State v. Marquis*, 525 A.2d 1041, 1042-43 (Me. 1987) (declining to address good faith—the only issue argued by the State on appeal—and instead first considering probable cause).[8]

---

[7]  Although the motion to suppress was nominally directed at the evidence seized pursuant to the warrant obtained by Jacobs, Nunez argues the evidence was tainted by the initial unlawful search pursuant to the warrant obtained by Renzullo.  The Renzullo affidavit and the initial search for drug evidence is therefore the focus of our discussion here.  *See State v. Johndro*, 2013 ME 106, ¶¶ 8, 19-20, 22, 82 A.3d 820.

[8]  This is consistent with our practice of first determining whether a constitutional violation occurred before reaching the good faith issue.  *See, e.g.*, *Arbour*, 2016 ME 126, ¶ 16 n.12, 143 A.3d 1106 ("Because we conclude that there was a substantial basis for the finding of probable cause to issue the search warrant, we do not consider the State's alternative 'good faith' argument."); *State v. Nadeau*, 2010 ME 71, ¶ 48 n.10, 1 A.3d 445 ("We do not discuss the Superior Court's application of the good faith exception because the search warrant, which authorized the July forensic examination of the computer, never 'expired.'"); *Estabrook*, 2007 ME 130, ¶¶ 1, 9, 932 A.2d 549; *State v. Veglia*, 620 A.2d 276, 277-79 & n.3 (Me. 1993) (holding that an issuing magistrate had a substantial basis for a probable cause finding and declining to address good faith); *State v. Tarantino*, 587 A.2d 1095, 1097-98 (Me. 1991) (concluding that a search was valid pursuant to the automobile exception and declining to decide the good faith issue); *State v. Marquis*, 525 A.2d 1041, 1042-43 (Me. 1987).

In cases considering the good faith exception, we have concluded that it did not apply because the warrants were so deficient that reliance on them was objectively unreasonable.  *See Johndro*, 2013 ME 106, ¶¶ 19-20, 82 A.3d 820; *State v. Diamond*, 628 A.2d 1032, 1034 (Me. 1993).  To date,

B.      Probable Cause Standard

[¶18]  "When reviewing the denial of a motion to suppress, we review the trial court's factual findings for clear error . . . ."  *State v. Nadeau*, 2010 ME 71, ¶ 15, 1 A.3d 445.  "Legal conclusions are reviewed de novo." *State v. Simmons*, 2016 ME 103, ¶ 12, 143 A.3d 819.  "[W]e review directly the finding of probable cause made by the magistrate who issued the warrant, affording great deference to the issuing magistrate."  *State v. Wright*, 2006 ME 13, ¶ 8, 890 A.2d 703.  The court must not "make a *de novo* determination of probable cause," *State v. Crowley*, 1998 ME 187, ¶ 4, 714 A.2d 834 (quotation marks omitted), but "must give the affidavit a positive reading and review the affidavit with all reasonable inferences that may be drawn to support the magistrate's determination."  *Wright*, 2006 ME 13, ¶ 8, 890 A.2d 703 (quotation marks omitted).

[¶19]  "Probable cause is established when, given all the circumstances set forth in the affidavit before [the magistrate], including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair

---

we have not held that evidence obtained from an unlawful search was admissible pursuant to the good faith exception.  We note that a number of state supreme courts have rejected the good faith exception on state constitutional grounds.  *See, e.g.*, *State v. Canelo*, 653 A.2d 1097, 1105 (N.H. 1995); *State v. Gutierrez*, 863 P.2d 1052, 1068 (N.M. 1993); *State v. Oakes*, 598 A.2d 119, 121-22 (Vt. 1991); *State v. Novembrino*, 519 A.2d 820, 857 (N.J. 1987).

probability that contraband or evidence of a crime will be found in a particular place." *State v. Rabon*, 2007 ME 113, ¶ 22, 930 A.2d 268 (quotation marks omitted). "In order to meet the probable cause standard, the affidavit must set forth some nexus between the evidence to be seized and the locations to be searched." *Simmons*, 2016 ME 103, ¶ 11, 143 A.3d 819 (quotation marks omitted).

[¶20] We apply the "totality of the circumstances approach" to probable cause, as set forth by the United States Supreme Court in *Illinois v. Gates*, 462 U.S. 213, 230 (1983). *Rabon*, 2007 ME 113, ¶ 22, 930 A.2d 268. Where a warrant affiant relies on informants, the court considers, together with all other facts presented within the four corners of the affidavit, (1) the informant's reliability and basis of knowledge, (2) the informant's claims about the defendant's criminal activities, and (3) other information about the defendant. *Id.* ¶ 25. "[T]he totality-of-the-circumstances approach permits a balanced assessment of the relative weights of all the various indicia of reliability (and unreliability) attending an informant's tip." *Id.* ¶ 23 (quotation marks omitted).

[¶21] Common indicia of the reliability of an informant's account include first hand observations of illegal activity, *State v. Arbour*,

2016 ME 126, ¶ 13, 146 A.3d 1106, the informant's past reliability, *Rabon*, 2007 ME 113, ¶ 27, 930 A.2d 268, and information detailing the informant's own involvement in illegal activity that could expose the informant to criminal liability, *State v. Dignoti*, 682 A.2d 666, 670 (Me. 1996). "People do not lightly admit a crime and place critical evidence in the hands of the police in the form of their own admissions. Admissions of crime, like admissions against proprietary interests, carry their *own indicia of credibility*—sufficient at least to support a finding of probable cause to search." *State v. Appleton*, 297 A.2d 363, 369 (Me. 1972) (quotation marks omitted).

C.      Whether the Renzullo Affidavit Established Probable Cause

[¶22]   Read individually and as a whole, Ireland's, Cabrera's, and the CD's accounts bear several hallmarks of reliability. Renzullo averred that she knew the CD and that the CD had been reliable in the past. Cabrera knew Nunez and had "mutual acquaintances" with him in New York. Ireland, Cabrera, and the CD detailed specific facts about Nunez's background and illegal drug trafficking activity in the Bangor and Brewer area. Ireland and the CD provided firsthand knowledge of Nunez's possession and sale of drugs, the most recent occurring within the previous month. Ireland and the CD also admitted to purchasing and using drugs—admissions that could have exposed

them to criminal liability and thus were unlikely to be offered unless grounded in truth.

[¶23] Contrary to Nunez's argument, there was sufficient information in the affidavit to support a probable cause finding that Nunez resided at the Verona Island property. Cabrera told officers that Nunez moved from Brewer to Verona Island and personally[9] led officers to the property, where he stated Nunez was not home because there was no Toyota parked in the driveway.[10] Officers were not necessarily required to independently corroborate nor did the affidavit need to detail Cabrera's basis of knowledge to satisfy probable cause; such rigid requirements would be inconsistent with the totality of the circumstances test. *See Rabon*, 2007 ME 113, ¶¶ 23, 31, 930 A.2d 268 ("An affidavit's inclusion of information regarding the observations of a person in addition to an informant is by no means required to establish probable cause under the totality of the circumstances test."); *Crowley*, 1998 ME 187, ¶¶ 6-7, 714 A.2d 834 ("[T]he basis of knowledge is no longer a separate and

---

[9] As noted, in fact another individual associated with Ireland and Cabrera led police to the residence. *See supra* n.3. Although Nunez appears to have intended to use the suppression hearing to attack alleged errors and omissions in the warrant affidavit, a criminal defendant must first make a substantial preliminary showing in order to be entitled to a testimonial hearing to challenge those deficiencies. *See State v. Diana*, 2014 ME 45, ¶ 11 n.1, 89 A.3d 132 (citing *Franks v. Delaware*, 438 U.S. 154 (1978)).

[10] That Nunez drove a Toyota is consistent with Ireland's information that when he was hired as a driver, he drove Nunez around in vehicles rented from a Toyota dealership.

independent requirement but one that is closely intertwined with the other elements to illuminate the question of probable cause.").

[¶24]  Nunez's strongest argument, which was the primary basis for the trial court's probable cause conclusion, is the absence of a nexus between the illegal activity and the place to be searched: nothing in the affidavit specifically connected Nunez's drug activity to the Verona Island property.  Renzullo generally averred that in her experience as a drug enforcement agent, drug traffickers typically keep evidence of drug activity in their homes.

[¶25]  The affidavit must indeed establish a sufficient nexus, but direct nexus evidence is not necessarily required: "The nexus need not, and often will not, rest on direct observation, but rather can be inferred from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime]."  *State v. Samson*, 2007 ME 33, ¶ 15, 916 A.2d 977 (quotation marks omitted).

[¶26]  In *Samson*, multiple persons reported that the defendant took nude pictures of them when they were under eighteen years old. 2007 ME 33, ¶ 3, 916 A.2d 977.  One victim stated that Samson made him perform sexual acts and took pictures.  *Id.* ¶¶ 3-4.  The victims told the

investigating detective that Samson had a computer, burnable discs, cameras, and a video camera in his residence. *Id.* ¶ 5. One of the victims once discovered nude pictures of his ten-year-old brother on Samson's computer. *Id.* ¶ 3. The detective, in submitting the warrant affidavit, averred that based on his training, knowledge, and experience, individuals who engage in sexual acts with minors and collect pictures would likely keep image files on a computer. *Id.* ¶ 5-6.

[¶27] We stated that an "officer's opinion that a person engaged in the creation and collection of child pornography through the use of computers and other electronic devices is likely to keep evidence of such use in his or her home, may be sufficient to establish a nexus between the evidence sought and the suspect's residence." *Id.* ¶ 16. In light of the victims' statements in the affidavit and the detective's opinion, we held that a reasonable person could conclude that evidence of illegal activity would be found in Samson's home and therefore a sufficient nexus was established to satisfy probable cause. *Id.* ¶¶ 17-18.

[¶28] We have not yet had occasion to consider an affidavit, like the one presented here, with an attenuated nexus between substantial drug trafficking activity and a suspect's residence. Numerous federal circuit courts of appeal,

however, have held that probable cause may exist to search a suspected drug trafficker's residence, even without any specific drug activity tied to the residence. *See, e.g.*, *United States v. Barnes*, 492 F.3d 33, 37 (1st Cir. 2007) ("[W]hen a defendant sells drugs outside his home, it is reasonable to conclude that there is evidence of his drug dealing activity in the home . . . ."); *United States v. Miggins*, 302 F.3d 384, 393-94 (6th Cir. 2002); *United States v. Hodge*, 246 F.3d 301, 306 (3d Cir. 2001) ("It is reasonable to infer that a person involved in drug dealing on such a scale would store evidence of that dealing at his home."); *United States v. McClellan*, 165 F.3d 535, 546 (7th Cir. 1999); *United States v. Feliz*, 182 F.3d 82, 88 (1st Cir. 1999) (concluding that probable cause existed to search the apartment of a known drug trafficker, notwithstanding the lack of direct evidence linking drug sales and the apartment); *United States v. Williams*, 974 F.2d 480, 481-82 (4th Cir. 1992); *United States v. Angulo-Lopez*, 791 F.2d 1394, 1399 (9th Cir. 1986) ("In the case of drug dealers, evidence is likely to be found where the dealers live.").

[¶29]    Particularly significant are detailed facts substantiating allegations that the suspect is a drug trafficker. Such indicators may include possessing drug quantities that would exceed personal use, using rental cars,

conducting organized distribution and sales, and carrying and concealing pre-packaged drugs. *See Hodge*, 246 F.3d at 306. The suspect must store goods related to the drug business somewhere. *See id.* If the suspect is a prolific drug trafficker, it therefore may be reasonable to infer that evidence of drug trafficking, including the drugs, business records, cash, guns, and other paraphernalia, will be found at the residence. *See id.*; *McClellan*, 165 F.3d at 546; *Feliz*, 182 F.3d at 87-88.

[¶30] Probable cause "is flexible and based on common sense" and does not require proof that evidence of a crime will in fact be found in the place to be searched. *State v. Martin*, 2015 ME 91, ¶ 10, 120 A.3d 113 (quotation marks omitted); *see also Feliz*, 182 F.3d at 87 ("There is no requirement that the belief be shown to be necessarily correct or more likely true than false."). Our review of probable cause is not de novo; we are limited to determining whether the issuing magistrate had a "substantial basis" to issue the warrant, drawing all reasonable inferences in favor of probable cause. *Wright*, 2006 ME 13, ¶ 8, 890 A.2d 703; *Crowley*, 1998 ME 187, ¶ 4, 714 A.2d 834.

[¶31] Here, the Renzullo affidavit contained detailed information from multiple sources, particularly Ireland, that substantiated Nunez's active drug trafficking enterprise, and established that Nunez resided at the Verona Island

property. Renzullo averred that, based on her knowledge and experience, evidence of drug trafficking would likely be found in a drug trafficker's home.

[¶32]  Based on the totality of circumstances, these facts generated a reasonable inference that there was a fair probability that drug-related evidence would be found at the Verona Island property.  *See Samson*, 2007 ME 33, ¶ 17 & n.8, 916 A.2d 977; *Rabon*, 2007 ME 113, ¶ 22, 930 A.2d 268; *see also Hodge*, 246 F.3d at 306; *McClellan*, 165 F.3d at 546; *Feliz*, 182 F.3d at 87-88.  We therefore conclude the issuing judge had a substantial basis to find probable cause for the warrant to issue, *Crowley*, 1998 ME 187, ¶ 4, 714 A.2d 834, and affirm the denial of the motion to suppress.

The entry is:

Judgment affirmed.

---

Hunter J. Tzovarras, Esq. (orally), Hampden, for appellant Oscar Nunez

R. Christopher Almy, District Attorney, and Tracy Collins, Asst. Dist. Atty. (orally), Prosecutorial District V, Bangor, for appellee State of Maine

Penobscot County Unified Criminal Docket docket number CR-2012-3918
FOR CLERK REFERENCE ONLY