MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2019 ME 140
Docket:       Kno-18-220
Argued:       February 5, 2019
Decided:      August 29, 2019

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, and HJELM, JJ.

# STATE OF MAINE

v.

# MICHAEL J. WARNER II

SAUFLEY, C.J.

[¶1]  The State appeals from the combined order of the Superior Court (Cumberland, Kennebec, and Knox Counties, *Murphy*, *J.*) granting Michael J. Warner II's motion to suppress evidence obtained pursuant to (1) a search warrant for Warner's cell phone account data authorized by Judge Dow on September 9, 2015, and (2) a search warrant for codefendant Taylor Shultz's cell phone account data authorized by Justice Mills on September 14, 2015.[1] The State argues that Warner lacked standing to challenge the warrant issued to search Shultz's account data and that the court (*Murphy, J.*) erred in determining that neither search warrant was supported by probable cause.

---

[1] Neither Taylor Shultz nor Charles York, another codefendant, is a party to this appeal.

Because we conclude that (1) the affidavit for the September 9, 2015, warrant to search Warner's account data was supported by probable cause, and (2) Warner lacked standing to challenge the September 14, 2015, warrant to search Shultz's account data, we vacate the order to the extent that it suppresses the evidence obtained through those two warrants.

## I. BACKGROUND

[¶2] The following facts are drawn from the affidavit in support of an application, dated September 9, 2015, for a warrant to search Warner's cell phone account data. *See State v. Nunez*, 2016 ME 185, ¶ 20, 153 A.3d 84.

[¶3] On July 30, 2015, a deputy of the Kennebec County Sheriff's Office responded to a reported burglary at Tobey's Grocery in China, Maine. An employee at Tobey's Grocery showed the deputy video surveillance footage of the store at the time of the burglary. The footage showed two men running from a park-and-ride near Tobey's Grocery to propane tanks next to the store. One individual was wearing dark pants, a dark hooded sweatshirt, gloves, a camouflage face mask and hat, and dark shoes with white on the sides of the soles. That individual pried open a back door to the store, kicked the office door open, found cash, took it, and then left. During this time, the surveillance video

showed a small, dark-colored, four-door car, believed to be a Volkswagen, moving through the Tobey's Grocery parking lot.

[¶4]  A Maine State Police trooper and his partner arrived at the scene to assist the deputy, and one of them noted the similarity between the burglary at Tobey's Grocery and a number of other commercial burglaries that had occurred in the area.

[¶5]  Later that day, the same trooper received a report from a manager at Tobey's Grocery that an employee of Cumberland Farms in Brunswick had reported finding a blue money bag with checks written out to Tobey's Grocery in the dumpster near the gas pumps.  The trooper and his partner went to the Cumberland Farms store, collected the money bag, and watched the store's video surveillance footage.  In that footage, a Volkswagen sedan pulled up in front of the store at 12:54 a.m. on July 30, 2015.  Three men exited the vehicle. Two of the men walked into the store while the driver removed some items from the trunk, walked to a dumpster near the gas pumps, and returned without the items in his hands.  The driver then walked into the store.  From the video, the trooper was able to identify the driver as Warner.  Before leaving Cumberland Farms, the trooper and his partner checked the dumpster and

4

found a second money bag, a size-13 black sneaker, and a blue hooded sweatshirt.

[¶6]  The trooper forwarded photographs of the other two individuals from the Cumberland Farms surveillance footage to the Biddeford Police Department.  The Biddeford police were able to identify one of the individuals as Shultz.

[¶7]  The trooper then learned through a motor vehicle check that Warner had a four-door, 2003 Volkswagen Passat registered in his name "that matche[d] the description of the Volkswagen seen at the Cumberland Farms store and at Tobey's Grocery during the burglary."  On July 22, 2015, shortly before the crimes at issue here, a Biddeford police officer had conducted a motor vehicle stop of Warner, who had been driving a green Volkswagen Passat.  At that time, Warner and the third suspect[2] had been on probation for burglary and theft, and Shultz had been the subject of an active arrest warrant for failure to appear and had been subject to conditions of release.  In addition, Warner had prior convictions in 2004, 2005, and 2011, for aggravated criminal

---

[2]  The affidavit identified this third suspect as someone other than Charles York, but evidence discovered later resulted in the charges being brought against York.

mischief, possession of burglary tools, burglary, unlawful trafficking in scheduled drugs, and possession of scheduled drugs.

[¶8]  The investigating trooper learned Warner's cell phone number from Warner's probation officer.  On September 9, 2015, the Biddeford officer conducted a second motor vehicle stop of the same vehicle, owned and operated by Warner, at which time Warner gave the officer the same phone number that Warner's probation officer had provided to the trooper.

[¶9]  Based on the above facts, on September 9, 2015, pursuant to the Stored Communications Act, 18 U.S.C.S. § 2703(a), (b)(1)(A), (c)(1)(A) (LEXIS through Pub. L. No. 116-39), and 16 M.R.S. §§ 642(1) and 648 (2015),[3] in accordance with 15 M.R.S. § 55 (2015),[4] a detective of the Kennebec County Sheriff's Office applied for a warrant to obtain and search records from wireless provider AT&T Mobility that were associated with Warner's cell phone account from July 30, 2015, to September 9, 2015—including, among other things, voice mail, text, and multimedia messages; text messaging logs, including the date and time of messages; text content; the telephone numbers associated with

---

[3]  Title 16 M.R.S. §§ 642(1) and 648 have since been amended, though the amendments are not relevant in the present case.  *See* P.L. 2017, ch. 144, §§ 4, 5 (effective June 8, 2017) (codified at 16 M.R.S. §§ 642(1), 648 (2018)).

[4]  Title 15 M.R.S. § 55 has since been amended, though the amendment is not relevant in the present case.  *See* P.L. 2017, ch. 144, § 2 (effective June 8, 2017) (codified at 15 M.R.S. § 55 (2018)).

incoming and outgoing text messages and telephone calls;[5] and "PING" information to assist in identifying the device's location. A judge (*Dow, J.*) issued the search warrant.

[¶10] On September 14, 2015, the investigating Maine State Trooper applied for a warrant to obtain and search records from Verizon Wireless that contained the same types of information associated with Shultz's cell phone account from July 1, 2015, to September 14, 2015. The affidavit was largely identical to the affidavit seeking to search Warner's data, supplemented with some additional facts, most of which were based on evidence obtained through the search of Warner's account data. A judge (*Mills, J.*) issued the warrant as requested by the State.

[¶11] On September 24, 2015, Warner was charged by complaint with receiving stolen property (Class B), 17-A M.R.S. § 359(1)(B)(1)(2018). Warner was then indicted on a total of thirty-three crimes allegedly committed across three different counties.[6]

---

[5] Although some of the listed information, such as the numbers associated with incoming and outgoing telephone calls, may have been obtainable without a warrant, *see Johnson v. Duxbury*, No. 18-2098, 2019 U.S. App. LEXIS 22426, at *9-13 (1st Cir. July 29, 2019), this consideration is not material to our analysis, and we do not discuss the issue further.

[6] Specifically, on December 11, 2015, Warner was charged by indictment in Cumberland County with five counts of burglary (Class B), 17-A M.R.S. § 401(1)(B)(5) (2018); six counts of aggravated criminal mischief (Class C), 17-A M.R.S. § 805(1)(A), (2) (2018); three counts of theft by unauthorized

[¶12]  About a year later, in September 2016, Warner, Shultz, and York filed motions to suppress certain evidence, including all evidence obtained as a result of the search warrants issued on September 9, 2015, for Warner's cell phone account data and on September 14, 2015, for Shultz's cell phone account data, arguing that the warrants were not supported by probable cause.  Warner, Shultz, and York also requested that, if the court determined that the affidavits presented to search the account data were supported by probable cause, the court conduct a *Franks v. Delaware* hearing to determine whether the detective or the trooper deliberately or with reckless disregard for the truth made false statements in his affidavit.  438 U.S. 154, 171-72 (1978).

[¶13]  On December 14, 2016, the Superior Court (*Murphy, J.*) held a nontestimonial hearing and, after determining that the defendants made a sufficient preliminary showing to justify a hearing, held a three-day hearing for

---

taking (Class B), 17-A M.R.S. § 353(1)(B)(1) (2018); and one count of theft by unauthorized taking (Class C), 17-A M.R.S. § 353(1)(B)(4) (2018).

On December 17, 2015, Warner was charged by indictment in Kennebec County with two counts of burglary (Class C), 17-A M.R.S. § 401(1)(A) (2018); one count of theft by unauthorized taking (Class B), 17-A M.R.S. § 353(1)(B)(1); one count of theft by unauthorized taking (Class C), 17-A M.R.S. § 353(1)(B)(4); one count of aggravated criminal mischief (Class C), 17-A M.R.S. § 805(1)(A), (2); and one count of criminal mischief (Class D), 17-A M.R.S. § 806(1)(A), (2) (2018).

On February 3, 2016, Warner was charged by indictment in Knox County with two counts of theft by unauthorized taking (Class B), 17-A M.R.S. § 353(1)(B)(1); two counts of theft by unauthorized taking (Class C), 17-A M.R.S. § 353(1)(B)(4); four counts of burglary (Class B), 17-A M.R.S. § 401(1)(B)(5); and four counts of criminal mischief (Class D), 17-A M.R.S. § 806(1)(A), (2).

purposes of both the *Franks* issue and the motions to suppress on February 8, April 28, and May 19, 2017. In an order dated March 15, 2018, the court rejected all claims for relief under *Franks v. Delaware*, finding that the affiants had not intentionally or recklessly disregarded the truth in their affidavits.

[¶14]  The court also ruled on the motions to suppress in the March 15, 2018, order.  The court held that Warner had a reasonable expectation of privacy in his cell phone account data.  Although the State argued that Warner lacked standing to challenge the warrant issued for Shultz's account data, the court concluded that he did have standing to challenge that warrant because information gathered from Warner's own account data was included in the affidavit supporting the application for a warrant to search Shultz's account data.

[¶15]  The court determined that both warrants were defective and invalid because they failed to articulate the nexus between the crime and the place to be searched—i.e., the cell phone records—stating that "there was not information sufficient for a finding of probable cause to believe that particularized evidence [of a crime] could be found on Warner or Shultz's cell phones." *See State v. Gurney*, 2012 ME 14, ¶ 33, 36 A.3d 893.

[¶16] The State filed a motion to clarify, for further findings of fact and conclusions of law, and for reconsideration of the decision to suppress evidence. *See* M.R.U. Crim. P. 41A(d). In clarifying its original analysis, the court confirmed its holding and found certain other facts that Warner asserted in his response to the State's motion for further findings of facts. It also clarified that, because it found that the warrants were "facially deficient," the good faith exception to the exclusionary rule did not apply.

[¶17] With the written approval of the Attorney General, the State timely appealed. 15 M.R.S. § 2115-A(1) (2018); M.R. App. P. 2B(b)(1), 21(b).[7]

## II. DISCUSSION

[¶18] The State argues that the court erred by failing to show appropriate deference to the judge who issued the search warrant dated September 9, 2015, for Warner's cell phone account data. When reviewed with proper deference, the State argues, the affidavit provides a substantial basis for the warrant judge's findings that there was probable cause to believe that Warner's cell phone account data contained evidence of a crime.

---

[7] Although interlocutory, "[a]n appeal may be taken by the State in criminal cases on questions of law . . . [f]rom an order of the court prior to trial which suppresses any evidence, including, but not limited to, physical or identification evidence or evidence of a confession or admission," as long as the Attorney General provides written approval. 15 M.R.S. § 2115-A(1), (5) (2018). Warner does not argue that this appeal is either unripe for appellate review or untimely.

[¶19]   The Fourth Amendment to the United States Constitution and article 1, section 5 of the Maine Constitution require a showing of probable cause, as supported by oath or affirmation, before a search warrant may be issued. *Gurney*, 2012 ME 14, ¶ 31, 36 A.3d 893; *State v. Reese,* 2010 ME 30, ¶ 11, 991 A.2d 806.  "[T]he term 'probable cause,' according to its usual acceptation, means less than evidence which would justify condemnation . . . .  It imports a seizure made under circumstances which warrant suspicion."  *Illinois v. Gates*, 462 U.S. 213, 235 (1983) (quotation marks omitted).   Probable cause is satisfied when, based on the totality of the circumstances, the warrant application "set[s] forth some nexus between the evidence to be seized and the locations to be searched."  *Gurney*, 2012 ME 14, ¶ 33, 36 A.3d 893 (quotation marks omitted).   "The nexus need not, and often will not, rest on direct observation, but rather can be *inferred* from the type of crime, the nature of the items sought, the extent of an opportunity for concealment and normal inferences as to where a criminal would hide [evidence of a crime]."  *Nunez*, 2016 ME 185, ¶ 25, 153 A.3d 84 (alteration in original) (emphasis added) (quotation marks omitted).

[¶20]  The "totality of the circumstances" test applicable when evaluating whether there is probable cause for a search "requires a practical,

common-sense decision whether, given all the circumstances set forth in the affidavit . . . including the veracity and basis of knowledge of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Gurney*, 2012 ME 14, ¶ 32, 36 A.3d 893 (quotation marks omitted).  The test, as set forth by the Supreme Court of the United States in *Illinois v. Gates*, requires a jurist considering a warrant affidavit to "deal with probabilities."  462 U.S. at 231 (quotation marks omitted).   Assessing probabilities is "not technical" but rather calls for consideration of the "factual and practical considerations of everyday life on which reasonable and prudent [people], not legal technicians, act."  *Id.* (quotation marks omitted); *see State v. Mariner*, 2017 ME 102, ¶ 13, 162 A.3d 241.

[¶21]  When the State appeals from the suppression of evidence seized pursuant to a search warrant, we review directly the finding of probable cause made by the issuing judge or magistrate.  *State v. Simmons*, 2016 ME 103, ¶ 11, 143 A.3d 819.  The Supreme Court of the United States has established that

> after-the-fact scrutiny by courts of the sufficiency of an affidavit should not take the form of *de novo* review.  A magistrate's determination of probable cause should be paid great deference by reviewing courts.  A grudging or negative attitude by reviewing courts towards warrants is inconsistent with the Fourth Amendment's strong preference for searches conducted pursuant

to a warrant; courts should not invalidate warrant[s] by interpreting affidavit[s] in a hypertechnical, rather than a commonsense, manner.

*Gates*, 462 U.S. at 236 (citations omitted) (quotation marks omitted). Accordingly, our review of probable cause is "limited to determining whether the issuing magistrate had a 'substantial basis' to issue the warrant, drawing all reasonable inferences in favor of probable cause." *Nunez*, 2016 ME 185, ¶ 30, 153 A.3d 84. This review is confined exclusively to the information within the four corners of the affidavit, and it is not a de novo review. *Id.* ¶¶ 18, 20, 30.

[¶22] In this case, the detective submitted an affidavit in support of his request for a search warrant for Warner's cell phone account data that did not explicitly articulate the direct link between Warner's cell phone account data and a crime—in other words, the detective did not explain in the affidavit why the cell phone data had evidentiary value. There is essentially no dispute, however, that the affidavit provided probable cause to believe that (1) Warner and Schultz had engaged in a burglary with another person; (2) Warner and Schultz had coordinated their movements and activities in committing the burglary; (3) Warner had an identified cell phone number; and (4) Warner had multiple prior convictions, several of which related to burglaries.

[¶23]  What the affidavit lacked was an explicit statement that, in the experience of law enforcement, cell phones are often used to arrange meetings or to coordinate or plan a multi-person burglary, and that the cell phone records may therefore contain evidence of that contact and of the suspected burglars' whereabouts when the crimes occurred.

[¶24]  Accordingly, our role on appeal is to determine whether that connection between the cell phones and the suspected criminal conduct could reasonably be inferred by the judge issuing the search warrant. *See id.* ¶ 30. In a world where cell phones are in the possession of the vast majority of individuals,[8] where cell phone information can sometimes be obtained without a search warrant,[9] and where Maine judges routinely hear evidence that individuals have planned or coordinated criminal activities through the use of cell phones,[10] the inference made by the judge here was entirely reasonable.  In short, the affidavit set forth facts that allowed the issuing judge to infer from

---

[8]  *See Riley v. California*, 573 U.S. 373, 395 (2014) ("[M]any of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives . . . .").

[9]  *See* 18 U.S.C.S. § 2703 (LEXIS through Pub. L. No. 116-39) (authorizing certain disclosures of wire or electronic communications information without a warrant); *see also State v. Pagnani*, 2018 ME 129, ¶ 19, 193 A.3d 823 (holding that exceptions to the warrant requirement apply to cell phone information).

[10]  *See, e.g., State v. Journet*, 2018 ME 114, ¶ 4, 191 A.3d 1181; *State v. Lopez*, 2018 ME 59, ¶ 8, 184 A.3d 880; *State v. Lemay*, 2012 ME 86, ¶ 7, 46 A.3d 1113.

the totality of the circumstances that Warner's cell phone account data would produce evidence of Warner's involvement in the Tobey's Grocery burglary.

[¶25] The affidavit was replete with detailed facts that linked Warner to the burglary at Tobey's Grocery. Warner was identified as one of the individuals at Cumberland Farms where evidence from the crime was discarded, and Warner had a Volkswagen Passat that matched both the description of the car at the burglary and the description of the car observed in the video surveillance from Cumberland Farms. Warner also had a long criminal history, including a history of committing burglaries. *See State v. Arbour*, 2016 ME 126, ¶ 15 n.11, 146 A.3d 1106 ("'An affiant's knowledge of the target's prior criminal activity or record clearly is material to the probable cause determination.'" (quoting *United States v. Taylor*, 985 F.2d 3, 6 (1st Cir. 1993)) (citing *State v. Gallant*, 531 A.2d 1282, 1284 (Me. 1987))). Warner was identified as one of *three* individuals at Cumberland Farms where evidence of the crime was discovered, not long after at least *two* individuals burglarized Tobey's Grocery.

[¶26] Because the crime was alleged to have been committed by more than one individual, the issuing judge could reasonably infer that the individuals conferred about the crime and that their cell phone account data

would contain evidence of the crime. *Cf. Riley v. California*, 573 U.S. 373, 385 (2014) (observing that cell phones are "such a pervasive and insistent part of daily life that the proverbial visitor from Mars might conclude they were an important feature of human anatomy"). From the *totality of these facts*—the multiple individuals seen together near the hours of the crime, all with criminal histories, with one of them owning a vehicle matching both the description of the car at the scene of the crime and the description of the car observed at a location where discarded evidence of the crime was found—the judge could reasonably determine that Warner's cell phone account data would produce evidence—for instance, text messages, voicemail messages, call history, and location information—that could demonstrate his involvement in the crime. Drawing all reasonable inferences in favor of probable cause, we conclude that the issuing judge had a substantial basis to issue the warrant.

[¶27] In reaching this conclusion, we emphasize its limited scope. The warrant at issue sought specifically identified aspects of Warner's cell phone records, covering a defined period, from the wireless provider. The detective did not seek—and the court did not issue a warrant for—the seizure of Warner's cell phone itself. As the Supreme Court has explained, a cell phone provides a wide-open window into a person's life. *Id.* at 386, 395. "Cell phones

. . . place vast quantities of personal information literally in the hands of individuals." *Id.* at 386. "[M]any of the more than 90% of American adults who own a cell phone keep on their person a digital record of nearly every aspect of their lives—from the mundane to the intimate." *Id.* at 395.

[¶28] The extraordinary breadth and sensitivity of information that people may store on their cell phones creates a qualitatively different factual context in which to consider the constitutionality of a warrant to search an entire cell phone, compared to the factual context for the warrant issued in this case, where the information sought from the wireless service provider was much more circumscribed. This case therefore does not call for us to consider whether the issuance of a warrant for the search of a suspect's cell phone itself would be proper if it were based merely on information that more than one person was involved in committing the crime, the suspect was one of those people, and the suspect owned a cell phone. *See Commonwealth v. White*, 59 N.E.3d 369, 371-72, 376-77 (Mass. 2016) (concluding that those circumstances were insufficient to support a determination of probable cause); *see also United States v. Ramirez*, 180 F. Supp. 3d 491, 495 (W.D. Ky. 2016) (same); *Stevenson v. State*, 168 A.3d 967, 981-86 (Md. 2017) (Adkins, J., concurring) (same). And we express no view on that issue today.

[¶29]   The court also suppressed evidence obtained through the September 14, 2015, search warrant to search Shultz's cell phone account data. Ordinarily, an individual lacks standing to challenge the search of another person's property unless the individual has a reasonable expectation of privacy in that property.  *See State v. Lovett*, 2015 ME 7, ¶ 8, 109 A.3d 1135; *State v. Filion*, 2009 ME 23, ¶ 11, 966 A.2d 405; *State v. Maloney,* 1998 ME 56, ¶ 6, 708 A.2d 277.  Warner argues, however, that he had standing to challenge the admissibility of evidence discovered in the Shultz search because it was through an illegal search of his own account data that law enforcement obtained some of the information that it provided in the affidavit seeking Shultz's data.  *See State v. Johndro*, 2013 ME 106, ¶ 21, 82 A.3d 820 ("[A]ny evidence obtained through the exploitation of police illegality must be excluded as fruit of the poisonous tree.").

[¶30]  Based on our conclusion that there was no illegality in the search of Warner's data, and given that Warner has not otherwise asserted any reasonable expectation of privacy in Shultz's data, we conclude that Warner lacks standing to challenge the search of Shultz's data.  Accordingly, we also vacate the court's suppression of the evidence obtained through that search. We need not, and do not, reach any of the State's remaining arguments.

The entry is:

> Order suppressing evidence obtained through the September 9, 2015, and September 14, 2015, warrants vacated. Remanded for further proceedings.

Maeghan Maloney, District Attorney, Prosecutorial District 4, Augusta; Jonathan Liberman, District Attorney, Prosecutorial District 6, Rockland; and Stephanie Anderson, District Attorney, and Carlos Diaz, Asst. Dist. Atty. (orally), Prosecutorial District 2, Portland, for appellant State of Maine

Christopher R. Guillory, Esq. (orally), Saco, for appellee Michael J. Warner II

Cumberland County Unified Criminal Docket docket number CR-2015-5750
Kennebec County Unified Criminal Docket docket number CR-2015-2508
Knox County Unified Criminal Docket docket number CR-2016-145
FOR CLERK REFERENCE ONLY