2005 ME 100

**STATE of Maine**

v.

**Norman R. DICKINSON Jr.**

Supreme Judicial Court of Maine.

Argued: March 25, 2005.

Decided: Aug. 24, 2005.

James G. Mitchell, ADA, Somerset County Courthouse, Skowhegan, for plaintiff.

M. Michaela Murphy, Esq., Jabar, Batten, Ringer & Murphy, Waterville, for defendant.

Panel: SAUFLEY, C.J., and CLIFFORD, DANA, ALEXANDER, CALKINS, and LEVY, JJ.*

LEVY, J.

[¶ 1] Norman R. Dickinson Jr. appeals from judgments of conviction and a sentence entered in the Superior Court (Somerset County, *Studstrup, J.*) after a jury found him guilty of one count of aggravated marijuana cultivation pursuant to 17–A M.R.S.A. § 1105(1)(B) (Supp.2002) (Class A); one count of possession of a firearm by a prohibited person pursuant to 15 M.R.S.A. § 393(1)(A) (Supp.2001) (Class C); [1] and one count of aggravated trafficking in scheduled drugs pursuant to 17–A M.R.S.A. § 1105(1)(C) (Supp.2002) (Class B). [2] Dickinson raises several issues on appeal, including that the court erred in (1) denying his motion for a *Franks* hearing,

*Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978), and (2) concluding that the four-year minimum mandatory unsuspended sentence for a Class A offense of aggravated marijuana cultivation applied, 17–A M.R.S.A. § 1252(5–A)(A) (Supp.2002). [3] We affirm the judgment and the sentence.

## I. BACKGROUND

[¶ 2] The Somerset County Sheriff's Department sought a warrant in May 2000 to search a Quonset hut in Solon owned by Dickinson based on a twenty-four-page affidavit prepared by Detective Lieutenant Carl Gottardi II. The warrant affidavit explained that the Department's investigation of Dickinson began with an anonymous tip that he was using the hut for the growth and sale of marijuana, and that he had been previously involved in illegal drug activity. The warrant affidavit corroborated the anonymous tip with information concerning a prior investigation of Dickinson, and information obtained through surveillance of the hut from April through December of 1999, and in January, April, and May of 2000. The warrant affidavit described activities and persons at the hut that were consistent with marijuana cultivation or trafficking, including the high rate of electrical power consumption at the hut and the absence of visible business activities.

---

* Justice Paul L. Rudman sat at oral argument and participated in the initial conference, but retired before this opinion was certified.

1. Title 15 M.R.S.A. § 393(1)(A) was deleted and replaced by P.L.2001, ch. 549, § 2 (effective July 25, 2002) (codified at 15 M.R.S.A. § 393(1)(A–1) (2003)). Section 393(1)(A–1) has since been amended by P.L.2005, ch. 419, § 7 (effective Jan. 1, 2006).

2. Title 17–A M.R.S.A. § 1105 was repealed and replaced by P.L.2001, ch. 383, § 119 (effective Jan. 31, 2003) (codified at 17–A

M.R.S.A. §§ 1105–A to 1105–D (Supp.2002)). Title 17–A M.R.S.A. § 1105–D, which addresses aggravated marijuana cultivation, has since been amended by P.L.2005, ch. 415, § 4 (effective Sept. 17, 2005). Title 17–A M.R.S.A. § 1105–A, which addresses aggravated trafficking, has since been amended by P.L.2005, ch. 415, § 2 (effective September 17, 2005).

3. Title 17–A M.R.S.A. § 1252(5–A)(A) has since been amended by P.L.2001, ch. 383, § 151 (effective Jan. 31, 2003) (codified at 17–A M.R.S.A. § 1252(5–A)(A) (Supp.2004)).

[¶ 3] The warrant affidavit contained, among others, the following allegations: (1) the affiant received an anonymous tip from an informer who claimed to know Dickinson personally and know that he was involved in illegal drug activity at the hut, and who alleged that Dickinson had been "busted" before for drug dealing; (2) the affiant corroborated that Dickinson had in fact been previously convicted of unlawful trafficking in scheduled drugs; (3) whereas previous businesses at the hut had had windows and doors at each end, Dickinson had sealed them off so that the only door leading in or out of the hut was a metal security-type door that opened "out"—the affiant asserted that it is common for marijuana growers and traffickers to seal and secure their buildings; (4) the affiant observed a black piece of plastic hanging down from the ceiling area inside the hut—the affiant asserted that it is common for marijuana growers to seal their grow rooms with plastic; (5) the hut was frequented by individuals who were either known or were suspected to have ties to illegal drug activities; (6) the affiant observed the presence of a green plastic tub in front of the hut—the affiant asserted that it is common for marijuana growers to use such tubs as planters or storage containers; (7) the affiant observed an individual who had just left the hut and smelled of marijuana; (8) the affiant observed an individual whom he believed to be Dickinson drive evasively after leaving the hut, as if he were trying to determine if he was being followed; and (9) vehicle traffic at the hut tended to occur late in the day and not at a time at which persons normally visit a business.

[¶ 4] A District Court judge (*MacMichael, J.*) found that the allegations in the affidavit established probable cause to search the Quonset hut and authorized the warrant. The Sheriff's Department executed the warrant and seized, among other things, 645 marijuana plants and a loaded .38 revolver. Based upon the evidence seized, Dickinson was indicted in February 2001 for the aforementioned charges.

[¶ 5] In May 2001, Dickinson filed several motions, including a motion for a *Franks* hearing. The Superior Court ultimately denied the *Franks* motion in a written decision filed in September 2002 after a nontestimonial hearing.

[¶ 6] A jury trial was held in November 2003. The jury found Dickinson guilty on all three charges, and the court entered judgments of conviction. Dickinson was sentenced to a term of ten years for the count of aggravated marijuana cultivation, with all but five suspended, and four years of probation; a term of two years for the count of possession of a firearm by a prohibited person, to be served concurrently with the sentence for the first count; and a term of five years for the count of aggravated trafficking in scheduled drugs, to be served concurrently with the sentences for the first two counts. The court rejected Dickinson's argument that the statutory criteria set forth in 17–A M.R.S.A. § 1252(5–A)(B)(2) (Supp.2002) [4] supported the imposition of a sentence more lenient than the four-year minimum mandatory unsuspended sentence generally required for a Class A offense of aggravated marijuana cultivation.

[¶ 7] After unsuccessfully moving for a new trial, Dickinson appealed the court's judgments of conviction and applied for leave to appeal his sentence. *See* 15 M.R.S.A. § 2151 (2003); M.R.App. P. 20. His application was granted and consolidated with this appeal.

**4.** Title 17–A M.R.S.A. § 1252(5–A)(B)(2) has since been amended by P.L.2003, ch. 232, § 1 (effective Sept. 13, 2003) (codified at 17–A M.R.S.A. § 1252(5–A)(B)(2) (Supp.2004)).

## II. DISCUSSION

### A. Dickinson's *Franks* Motion

[¶ 8] A *Franks* hearing is an evidentiary hearing pursuant to which a defendant is permitted to challenge the truthfulness of statements made in an affidavit to support a search warrant. *Franks*, 438 U.S. at 155–56, 98 S.Ct. 2674. A criminal defendant seeking to suppress the fruits of a warrant search is entitled to a *Franks* hearing only if she or "he makes a 'substantial preliminary showing' that: (1) the affidavit to obtain a warrant included intentional and knowing misstatements or misstatements made in reckless disregard for the truth, and (2) ... the misstatements were necessary for a finding of probable cause." *State v. Hamel*, 634 A.2d 1272, 1273 (Me.1993) (quoting *Franks*, 438 U.S. at 155, 98 S.Ct. 2674). There is a presumption of validity with respect to a search warrant affidavit. *Franks*, 438 U.S. at 171, 98 S.Ct. 2674. Therefore, to obtain a *Franks* hearing, a defendant's "attack must be more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.* A defendant must make "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof." *Id.* The allegations "should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons." *Id.* "Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained." *Id.* Moreover, "if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required." *Id.* at 171–72, 98 S.Ct. 2674. A similar analysis applies "if the overall falsity of the affidavit arises out of the [intentional or reckless] omission of facts negatory of probable cause." *State v. Rand*, 430 A.2d 808, 821 (Me.1981).

[¶ 9] The Superior Court concluded that Dickinson "failed to present specific information [either] that any of the statements in the warrant [affidavit] were false or that[,] if there was false or incomplete information[,] ... the affiant included or omitted that information knowingly or with reckless disregard." The court, quoting *State v. Van Sickle*, 580 A.2d 691, 693 (Me.1990), added, "even if those portions of the affidavit contested by [Dickinson] were deleted[,] ... [Dickinson] would still not be entitled to an evidentiary hearing because the information attacked was 'only peripheral facts, not the core information that established probable cause for issuing the search warrant.'" [5]

[¶ 10] Dickinson argues that Gottardi recklessly, if not intentionally, included false information in the warrant affidavit that was necessary to the warrant judge's finding of probable cause and omitted facts that would have negated the finding of probable cause in two respects.[6] First, he

---

**5.** As a general matter, we review a court's factual findings on suppression issues for clear error and its legal conclusions de novo. *See State v. Coombs*, 1998 ME 1, ¶¶ 7–8, 704 A.2d 387, 389–90. We have not previously articulated the standard of review for the denial of an evidentiary hearing under *Franks v. Delaware*, 438 U.S. 154, 155–56, 98 S.Ct. 2674, 57 L.Ed.2d 667 (1978). It is a question on which the federal courts of appeals are divided, with some applying the clear error standard and others applying the de novo standard. *See United States v. Stewart*, 306 F.3d 295, 304 (6th Cir.2002). Because we conclude in this case that the court's denial of a *Franks* hearing should be affirmed regardless of which standard is applied, we do not address the issue further.

**6.** Before the Superior Court, Dickinson also challenged the warrant affidavit's character-

asserts that the affidavit was misleading in its description of the results of a 1988 search in response to an anonymous tip that he was growing a large amount of marijuana in Fairfield. The warrant affidavit stated that a state trooper who flew over the suspected area failed to locate any marijuana plants, but that it is common for reported marijuana sites not to be sighted at first and to be later found after "better information on the grow location" is obtained. Dickinson contends that this was an intentional distortion of the facts because Gottardi knew that a detective of the Fairfield Police Department had reported in a warrant affidavit following the aerial search (the Fairfield affidavit) that he and another officer also conducted a ground search of the suspected area and found no marijuana.

[¶ 11] Dickinson is correct that the warrant affidavit's description of the 1988 search is incomplete in that it fails to cite the unsuccessful ground search that is mentioned in the Fairfield affidavit, which Dickinson submitted in support of his *Franks* motion. Nonetheless, Dickinson cannot prove that Gottardi knew about the Fairfield affidavit. Dickinson alleges that Gottardi knew about the Fairfield affidavit because the State provided it to him in response to his discovery request for materials supplying the basis for the assertions in Gottardi's warrant affidavit. Dickinson's actual discovery request sought a much broader range of materials, however, and the fact that the Fairfield affidavit was among those materials does not necessari-

ly establish that Gottardi knew about it. Thus, Gottardi's failure to describe the ground search cannot be said to be an omission intended to mislead or made in reckless disregard of whether it would mislead the warrant judge.

[¶ 12] Next, Dickinson asserts that the warrant affidavit misled the warrant judge by misstating or omitting information concerning the legitimate business activities he conducted at the Quonset hut. Dickinson argues that the central premise of the warrant affidavit was that there was no business ongoing at the hut and the hut's electricity usage was too high for a residence, so there must have been a marijuana growing operation at the hut. Dickinson avers that had the warrant judge known that he was engaged in a legitimate business at the hut, the judge would not have viewed the hut's electricity usage suspiciously and that, standing alone, the other allegations in the warrant affidavit did not support a finding of probable cause. Therefore, Dickinson contends that the existence of business activity at the hut was "core information" with regard to whether the warrant affidavit established probable cause to search the hut.

[¶ 13] Dickinson claims that the warrant affidavit misstated or omitted the following facts related to his business activity at the hut. First, Dickinson claims that the warrant affidavit incorrectly stated that his father reportedly owns Turbo Electronics, when, in fact, Dickinson owns the business. Assuming the warrant affidavit's charac-

---

ization of a person observed at the Quonset hut as a "known drug dealer" based on information provided by an unidentified confidential informant. Dickinson does not reprise this argument before us. Because it was part of the array of facts that he argued before the trial court, however, we note that none of the affidavits or other materials submitted by Dickinson in support of his motion suggested

that the informant's characterization was wrong. He thus failed to support this allegation of a falsehood with an offer of proof. *See Franks*, 438 U.S. at 171, 98 S.Ct. 2674 (stating that a defendant must make "allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof").

terization is wrong, the error is of no consequence to the issue of probable cause.

[¶ 14] Second, Dickinson claims that the warrant affidavit incorrectly stated that there were no business-related signs at the Quonset hut. The affidavits submitted by Dickinson in support of his *Franks* motion reference both a stationary roadside sign and temporary signs advertising yard sales held at the hut. Even if these signs existed, however, Dickinson has not established that Gottardi's statement that there were no business-related signs at the hut was made with the intent to mislead or in reckless disregard of whether it would mislead the warrant judge. With respect to the stationary sign, the affidavits submitted by Dickinson indicate that the sign predated his ownership of the hut. The affidavits do not state what purpose the sign served or whether it was used to advertise Dickinson's business. The temporary yard sale signs were allegedly used during the summer of 1999. Dickinson's affidavit states that they were "in place from late Thursday evening in most cases and stayed up through late Sunday afternoon." Gottardi's warrant affidavit reports only that he drove by the hut on numerous occasions from April through December 1999. It is reasonably possible that he did not drive by the hut on one of the weekends that the yard sale signs were allegedly up. Therefore, Gottardi's statement that he did not observe any business-related signs is not necessarily false, as Dickinson suggests.

[¶ 15] Third, Dickinson claims that the warrant affidavit failed to state that there was a commercial dumpster on the premises that was filled to capacity each week with business garbage and computer scraps. Dickinson's affidavits establish, however, that the dumpster was present in 1999 but not in 2000. The warrant affidavit focused extensively on activities and conditions observed at the hut during 2000 and provided only cursory information regarding activities and conditions observed during 1999. Accordingly, the warrant affidavit's failure to mention that there was a commercial dumpster at the hut during 1999 cannot be said to be a statement that was either intended to mislead or made in reckless disregard of whether it would mislead the warrant judge.

[¶ 16] Finally, Dickinson claims that the warrant affidavit failed to state that there were commercial utility accounts for the hut; that the vehicles at the hut were registered jointly by him and Turbo Electronics; that there was a storage trailer on the premises leased to the business; and that there were outdoor floodlights and an air conditioner that might explain the hut's electricity usage. Dickinson urges that had these facts been included in the warrant affidavit, the warrant judge may well have concluded that there was a legitimate business at the hut and, thus, no probable cause to search. We disagree. The commercial nature of the utility accounts, vehicle registrations, and storage trailer, and the presence of the floodlights and air conditioner, are secondary to the detective's observations of conditions suggestive of drug activity and the absence of visible business activity.

[¶ 17] Considered as a whole, Dickinson's written submissions do not constitute a substantial preliminary showing that Gottardi's warrant affidavit misstated or omitted facts with the intent to mislead or in reckless disregard of whether such misstatements or omissions would mislead the warrant judge. *Hamel,* 634 A.2d at 1273; *Rand,* 430 A.2d at 821.

[¶ 18] As the Superior Court also concluded, even if Dickinson had made the substantial preliminary showing required to obtain a *Franks* hearing, probable cause for the search warrant would remain if the

alleged false facts were excised from the warrant affidavit and the omitted facts were included. *See Franks,* 438 U.S. at 171–72, 98 S.Ct. 2674; *Rand,* 430 A.2d at 821. Considering the totality of the circumstances and drawing all reasonable inferences from the other allegations in the warrant affidavit to support the District Court's finding, there is a substantial basis for the finding of probable cause regardless of whether Dickinson conducted legitimate business activities at the Quonset hut. *See State v. Diamond,* 628 A.2d 1032, 1033 (Me.1993) (citing *Illinois v. Gates,* 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983)). Therefore, the court properly denied Dickinson's motion for a *Franks* hearing.

[¶ 19] Dickinson also contends that it was improper for the court to consider affidavits submitted by the State in response to his *Franks* motion. Although the State is permitted to offer evidence in response to a defendant's challenge at a *Franks* hearing, *see, e.g., United States v. Williams,* 737 F.2d 594, 604 (7th Cir.1984), a court's reliance on affidavits submitted by the State in response to a defendant's motion for a *Franks* hearing presents a different question. The initial focus of a *Franks* proceeding is on whether the defendant has alleged that the search warrant was obtained through deliberate falsehoods or a reckless disregard for the truth, and whether the defendant's allegations are supported by "[a]ffidavits or sworn or otherwise reliable statements." *Franks,* 438 U.S. at 171, 98 S.Ct. 2674. This preliminary inquiry requires the court to consider the warrant affidavit and the defendant's written submissions, and should generally not include affidavits submitted by the State in response to the defendant's written submissions.

[¶ 20] The court's decision reflects that it ultimately denied Dickinson's *Franks* motion based on the assertions in Gottardi's warrant affidavit and Dickinson's written submissions: "Looking at the entire warrant affidavit, the defendant has generally failed to present specific information that any of the statements in the warrant were false or that if there was false or incomplete information[,] that the affiant included or omitted that information knowingly or with reckless disregard." Therefore, any error in the court's receipt of counter-affidavits from the State was harmless.

## B. Dickinson's Sentence

[¶ 21] The minimum unsuspended sentence for a Class A offense of aggravated marijuana cultivation is four years. 17–A M.R.S.A. § 1252(5–A)(A) (Supp.2002).[7] The court had the discretion to impose a lesser sentence based on the criteria set forth in 17–A M.R.S.A. § 1252(5–A)(B)(2) (Supp.2002):[8]

B. The court may impose a sentence other than a minimum unsuspended term of imprisonment set forth in paragraph A, if:

. . . .

(2) The court finds that:

(a) The defendant has no prior criminal history; and

(b) The defendant is an appropriate candidate for an intensive supervision program, but would be ineligi-

---

7. As noted above, *supra* note 3, section 1252(5–A)(A) has since been amended, but the four-year minimum mandatory unsuspended sentence for a Class A offense of aggravated marijuana cultivation has been retained. 17–A M.R.S.A. § 1252(5–A)(A) (Supp.2004).

8. Title 17–A M.R.S.A. § 1252(5–A)(B)(2) has since been amended by P.L.2003, ch. 232, § 1 (effective Sept. 13, 2003) (codified at 17–A M.R.S.A. § 1252(5–A)(B)(2) (Supp.2004)).

ble to participate under a sentence imposed under paragraph A; or

(c) The defendant's background, attitude and prospects for rehabilitation and the nature of the victim and the offense indicate that imposition of a sentence under paragraph A would frustrate the general purposes of sentencing set forth in section 1151.

[¶ 22] The court interpreted section 1252(5–A)(B)(2) as authorizing it to impose an unsuspended term of imprisonment of less than four years if it made positive findings pursuant to subsection (a) and either subsection (b) or (c). Because the court concluded that Dickinson did not satisfy subsection (a), it concluded that the four-year minimum mandatory unsuspended sentence applied. Based on its *Hewey* analysis, the court sentenced Dickinson to a term of ten years, with all but five suspended, and four years of probation. *See State v. Hewey*, 622 A.2d 1151, 1154–55 (Me.1993).

[¶ 23] Dickinson asserts that section 1252(5–A)(B)(2) is ambiguous and should be construed as requiring a court, before imposing a lesser sentence, to find either both subsections (a) and (b) or, alternatively, only subsection (c). Dickinson argues that had the court realized that a sentence of less than four years was permitted it might have used such a sentence as its starting point, which might have resulted in a lesser sentence than that imposed.

[¶ 24] We do not reach the question of whether the court erred in its construction of section 1252(5–A)(B)(2) because any error was harmless.[9] The sentencing record establishes that this is not a case in which a ten-year sentence, with all but five years suspended, was imposed because the court treated the four-year minimum mandatory sentence as a baseline for purposes of its *Hewey* analysis. The court stated, "I don't think we [are] under any minimum mandatory situation in any event. I mean even if there were not a minimum mandatory, I think we're talking about a situation that exceeds ... the minimum mandatory." Accordingly, the court's sentence was not influenced by its construction of the circumstances under which section 1252(5–A)(B)(2) authorizes a sentence less than the four-year minimum mandatory. Regardless of whether it was bound to sentence Dickinson to no less than four years of imprisonment, the court determined that Dickinson's sentence should exceed four years.

## C. Dickinson's Remaining Arguments

[¶ 25] We find Dickinson's remaining arguments to be without merit and do not address them separately.[10]

The entry is:

Judgment and sentence affirmed.

9. The State's reliance on *State v. Barnard*, 2003 ME 79, ¶ 25 n. 8, 828 A.2d 216, 224–25, for the proposition that we have previously construed 17–A M.R.S.A. § 1252(5–A)(B) and found that a defendant's "criminal record rendered him ineligible for any downward deviation from the mandatory minimum" sentence is misplaced for two reasons. First, that footnote was dicta because a previous version of section 1252(5–A)(B) was in effect at the time. Second, the footnote is ambiguous. It could mean either that a prior conviction precludes imposition of a lesser sentence, as the State posits, or, in keeping with Dickinson's interpretation, that Barnard's criminal record was so unsavory that a "safety net" provision would not have applied.

10. Dickinson also argues that the court erred in denying his motion to suppress and his motion in limine to exclude marijuana seized from his property.