MAINE SUPREME JUDICIAL COURT                    Reporter of Decisions
Decision:     2017 ME 13
Docket:       Oxf-15-182
Argued:       February 10, 2016
Decided:      January 19, 2017

Panel:        SAUFLEY, C.J., and ALEXANDER, MEAD, GORMAN, JABAR, HJELM, and HUMPHREY, JJ.

STATE OF MAINE

v.

DAVID L. THOMPSON

HJELM, J.

[¶1]  After David L. Thompson was charged with three drug-related crimes, he moved to suppress evidence obtained pursuant to a search warrant.  Included in his motion was a request for the court to hold a *Franks* hearing[1] to allow him to challenge the truthfulness of the statements in the affidavit supporting the warrant application.   To determine whether Thompson was entitled to a *Franks* hearing, the trial court (Oxford County, *Clifford, J.*) held a hearing where the State examined the affiant, who was a law enforcement officer involved in the investigation.  During the course of the State's direct examination, the court stated that, based on its review of the affidavit and the officer's partial testimony, it determined that Thompson had

---

[1] *See Franks v. Delaware*, 438 U.S. 154 (1978).

not made a sufficient showing to warrant a full *Franks* hearing, and denied his request. The court also rejected Thompson's assertion that the warrant was not supported by probable cause. Thompson entered conditional guilty pleas to all charges. On this appeal, we affirm the court's order denying that part of Thompson's motion challenging probable cause. We conclude, however, that the hearing conducted by the court must be treated as the beginning of a *Franks* hearing. We therefore vacate the judgment and remand for the court to hold a full hearing.

## I. BACKGROUND

[¶2] Maine Drug Enforcement Special Agent Tony L. Milligan was involved in an investigation into the manufacture and distribution of methamphetamine. In February 2014, Milligan submitted a consolidated application seeking search warrants for four residences, including Thompson's residence in Gilead, which he shared with his son, Mico Thompson.[2] The fifty-page affidavit supporting the application describes conduct and circumstances involving Thompson, Mico Thompson, and six other people allegedly involved in illegal drug activity.

---

[2] For ease of reference, in this opinion we will refer to the defendant as "Thompson" and to other members of his family by their full names.

[¶3]   The affidavit contains the following information concerning Thompson.  Three unnamed people ("sources of information" or "SOI") told Milligan that Thompson was involved in the manufacturing of methamphetamine.  SOI #1 previously provided the Maine Drug Enforcement Agency with drug trafficking information that was independently confirmed. Amanda Thompson, who is Thompson's daughter and herself makes methamphetamine, told SOI #1 that Thompson and her brother, Mico, were involved in producing methamphetamine in the basement of Thompson's Gilead residence.   The affidavit made reference to an audio-recorded controlled purchase of methamphetamine by SOI #1 from a third person, who was also a subject of the warrant application.  Milligan stated in the affidavit that during the transaction, the third person "indicated to SOI #1 that he was the main distributor for AMANDA THOMPSON . . . and of his association with others . . . that are also making and selling methamphetamine— . . . [including] MICO THOMPSON and his father in Gilead."

[¶4]  As recited in Milligan's affidavit, two other SOIs also reported that Mico Thompson's father, whose name they did not know, was involved in the production of methamphetamine.   SOI #3, who had provided truthful information to law enforcement in the past, stated that methamphetamine

4

was being produced in Mico Thompson's father's basement, although the affidavit does not describe the underlying basis for the information. SOI #4 is a "concerned citizen" who provided information about the production and trafficking of methamphetamine to assist law enforcement, and acquired information about Thompson's involvement in methamphetamine production through conversations with a co-worker who is "a regular methamphetamine customer." SOI #4 reported other details, including Thompson's use of the "shake and bake" production method, his willingness to trade methamphetamine for commercial ingredients used in the production process, and his place of employment.

[¶5] Through the investigation, Milligan learned that Mico Thompson's father's name is David Thompson and, by happenstance, subsequently saw Thompson at a local business. Milligan followed Thompson and saw him meet Amanda Thompson's boyfriend. Milligan made "observations [that] were consistent with that of an apparent drug transaction" between the two.

[¶6] The warrant applications were granted in early February 2014 by a District Court judge (*Carlson, J.*), serving as the reviewing magistrate, and several days later police executed the warrant and conducted the search. Thompson was subsequently charged by criminal complaint and, in

April 2014, by indictment for two counts of aggravated trafficking in scheduled drugs (Class A), 17-A M.R.S. § 1105-A(1)(B)(1) (2015),[3] and one count of conspiracy to commit aggravated trafficking in scheduled drugs (Class B), 17-A M.R.S. §§ 151(1)(B), 1105-A(1)(B)(1) (2015). Thompson pleaded not guilty.

[¶7] Thompson filed a motion for sanctions based on allegations of discovery violations by the State. *See* M.R. Crim. P. 16(d).[4] In the motion, Thompson sought dismissal of the charges or a court order prohibiting the State from presenting certain evidence. The court ultimately denied the motion summarily.

[¶8] Thompson also filed a motion to suppress evidence, asserting that the information in the warrant affidavit was not sufficient to support a finding of probable cause and that the affidavit included intentional or knowing misstatements or misstatements made in reckless disregard of their truth. Based on the latter ground, Thompson requested that the court hold a testimonial *Franks* hearing. He later filed a "supplemental motion" that

[3] The sentencing classification for each charge was enhanced because the State alleged that David Thompson had been previously convicted of a qualifying drug offense.

[4] The Maine Rules of Criminal Procedure applied in this instance. The Maine Rules of Unified Criminal Procedure became effective in Oxford County on April 1, 2015, shortly after Thompson entered conditional guilty pleas on March 27, 2015. M.R.U. Crim. P. 1(e)(2).

6

elaborated on his allegations that the warrant affidavit contained misstatements. In response, the State filed a "[c]onsolidated [m]otion" to deny the motion to suppress and the request for a *Franks* hearing.

[¶9] In January 2015, over objections of both parties, the court held a testimonial hearing associated with Thompson's suppression motion.[5] At the beginning of the hearing, the court stated that it wanted to hear testimony from Milligan, and that the purpose of the hearing was for the presentation of evidence that would allow it to determine whether Thompson was entitled to a *Franks* hearing:

> And the reason I'm doing this, I think . . . the most efficient way for me to get a grasp as to whether or not there was an entitlement to a Franks hearing is to listen to the affiant go through the affidavit to point out the information on which he relied, some of which is challenged, a lot which is challenged . . . .

The court acknowledged that "it's unusual to have a hearing before a hearing." The parties objected to the procedure invoked by the court: the State argued that Thompson had not made the showing necessary to merit *any* hearing, and Thompson asserted that based on the information accompanying his motion, he was entitled to a full *Franks* hearing.

---

[5] Mico Thompson had also been charged with drug offenses. He joined in Thompson's motion but immediately before Milligan began to testify at the hearing, Mico entered guilty pleas pursuant to a plea agreement, and he did not participate further in the hearing.

[¶10]  The State called Milligan as a witness.  As Milligan testified, the court suggested to him that in the motion for a *Franks* hearing, Thompson alleged that the recording of the controlled drug purchase between SOI #1 and the third person did not support Milligan's statement in the affidavit that the third person "indicated" that Thompson was manufacturing and selling methamphetamine.  Milligan then explained that investigators who monitor a controlled drug transaction eventually prepare reports and affidavits based both on their memory of what they heard and their debriefing of an informant.  Milligan also explained to the court that in a warrant affidavit, the description of transactions is sometimes based on the investigators' interpretation of words or references to people.  As to this particular transaction, Milligan agreed that he was "able to infer that it was Mico's father even though David Thompson's name wasn't spoken."

[¶11]  In an exchange with Milligan, the court also made reference to the description in the warrant affidavit about the encounter between Thompson and Amanda Thompson's boyfriend, which Milligan stated in the affidavit was "consistent" with a drug transaction.  When the court raised this issue, Milligan stated, "You know, I should just say, I don't even know what we saw, and I think I made that clear in the affidavit.  To the naked eye it looked—it

8

was indicative [of] a drug transaction, but what it was or wasn't—." In response to a statement by the court, Milligan agreed that he had not claimed in his affidavit that it was a drug transaction but that it was merely "consistent with or indicative of" one.

[¶12] After Milligan finished answering a question presented by the State, the court stated:

> [O]ver the [d]efendant's objection, based on the testimony of Agent Milligan and my review of the affidavit and of the State's memorandum, I think that I'm going to deny [d]efendant's motion for a Franks hearing . . . because . . . I just don't think there's anything that appears to me to be a . . . deliberate material falsity, or if[,] even discounting the information from the recording of the [controlled] buy . . ., there is . . . more than enough information in the affidavit that would be sufficient for the magistrate to sign the affidavit.

Thompson then stated that he objected to the absence of any opportunity to cross-examine Milligan and to the court's failure to listen to the recording of the controlled buy, which Thompson had provided to the court. The court explained that "cross-examination of this witness is, in fact, a Franks hearing. . . . [T]he [d]efendant has the burden of demonstrating the entitlement to a Franks hearing. And I think they've not met the burden based on the material they submitted *as well as the explanation of Agent Milligan*." (Emphasis added.)

[¶13]  The court took under advisement and later denied the remaining part of Thompson's motion, which challenged the sufficiency of the affidavit to demonstrate probable cause to search his residence.  Pursuant to Maine Rule of Criminal Procedure 11(a)(2), Thompson subsequently entered conditional guilty pleas to the three pending charges, reserving his right to appeal from the orders denying his motion to suppress and motion for sanctions.  The court found Thompson guilty based on his pleas, and on each count, by agreement of the parties, imposed concurrent prison sentences of eight years with all but four years suspended, to be followed by four years of probation on the charges of aggravated trafficking in scheduled drugs and three years of probation on the conspiracy charge.  The court also ordered Thompson to pay the minimum mandatory fine of $400 on each of the two charges, *see* 17-A M.R.S. § 1301(6) (2015),[6] and imposed restitution of $2,500 for the cost of drug testing.  Pursuant to the conditional guilty pleas, Thompson appealed.

## II.  DISCUSSION

[¶14]  Thompson argues that (1) the information contained in the warrant application was insufficient to allow a probable cause determination; (2) the court erred in holding a preliminary hearing and allowing only the

---

[6]  Although the court stated at the sentencing hearing that the fines would be included in the sentences, they were not set out in the resulting judgment and commitment.

State to present evidence that the court considered when denying his motion for a *Franks* hearing; (3) he made a substantial preliminary showing that entitled him to a *Franks* hearing; and (4) the court erred in denying his discovery-based motion for sanctions. We first consider Thompson's arguments related to his suppression motion, and we then briefly address his discovery motion.

A.     Motion to Suppress

[¶15]  In his motion to suppress, Thompson challenged the issuance of the search warrant in two ways. First, he asserted that the information contained within the four corners of the affidavit did not support the determination of probable cause. Second, he claimed that the affidavit submitted in support of the warrant application was affected by actionable misstatements, entitling him to relief pursuant to *Franks*. The court denied both aspects of Thompson's motion, which we address in turn.

1.     Probable Cause Determination

[¶16]  Thompson argues that evidence obtained through the search warrant supported by Milligan's affidavit should have been suppressed because the informants referenced in the affidavit were unnamed and the information lacked corroboration, and that in the totality of the

circumstances, the affidavit fell short of establishing probable cause. On appeal from a denial of a motion to suppress evidence obtained by execution of a search warrant, we review directly the issuing judge's finding of probable cause to issue the warrant. *State v. Samson*, 2007 ME 33, ¶ 11, 916 A.2d 977. "Probable cause exists when, based on the totality of the circumstances, there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Id.* ¶ 12 (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). Our review is confined to "the information within the four corners of the affidavit," with that information viewed "in a positive light." *State v. Simmons*, 2016 ME 103, ¶ 12, 143 A.3d 819 (quotation marks omitted).

[¶17] Milligan's affidavit contained information supporting the probable cause determination that Thompson was involved in illegal drug-related activity and that evidence of that criminal conduct would be found at his residence. Three SOIs separately reported that Thompson was involved in producing methamphetamine, and two of those informants specified that Thompson did so in the basement of his home. Although the SOIs were not identified by name, the affidavit stated that each of them had provided reliable information in the past; the affidavit explained that two of the SOIs, who are "citizen informants," obtained their information from people

involved in the illegal drug activity under investigation; and the information from each of the SOIs was mutually corroborative. These factors entitled the District Court judge to infer that the information was reliable. *See State v. Rabon*, 2007 ME 113, ¶ 24, 930 A.2d 268. Even beyond this, an officer saw Thompson participate in an apparent drug transaction with another individual who also sold methamphetamines to a different SOI during a transaction monitored and recorded by drug investigators.

[¶18] The totality of the information within the four corners of the affidavit established a fair probability that evidence of criminal conduct would be found at Thompson's home and supported the District Court judge's probable cause determination. The court therefore did not err in denying this aspect of Thompson's suppression motion. *See State v. Nigro*, 2011 ME 81, ¶ 27, 24 A.3d 1283.

2.  Motion for *Franks* Hearing

[¶19] Having concluded that the court did not err in rejecting Thompson's argument that the affidavit failed to support the District Court judge's probable cause determination, we next consider the court's treatment of Thompson's motion for a *Franks* hearing.

[¶20]  In contrast to challenging the sufficiency of the information as it is presented in a warrant affidavit, a defendant may seek to invoke the process established in *Franks* and go behind that information based on a claim that the affiant knowingly or recklessly misstated information, *see State v. Hamel*, 634 A.2d 1272, 1273 (Me. 1993), or deliberately omitted facts "negatory of probable cause," *State v. Van Sickle*, 580 A.2d 691, 693 (Me. 1990).  Affidavits submitted in support of warrant applications are presumed to be proper. *Franks v. Delaware*, 438 U.S. 154, 171 (1978); *Hamel*, 634 A.2d at 1273-74. Therefore, in order to demonstrate an entitlement to an evidentiary hearing where a challenge to alleged misstatements may be developed on a proper record, a defendant must make a "substantial preliminary showing" that (1) the affiant "knowingly and intentionally, or with reckless disregard for the truth" made a false statement in a warrant affidavit, and (2) "the allegedly false statement is necessary to the finding of probable cause."  *Franks*, 438 U.S. at 155-56.  If a defendant makes the requisite showing, he is constitutionally entitled to a *Franks* hearing.  *Id.* at 156.

[¶21]  The substantial preliminary showing that the defendant must make is in the nature of an offer of proof.  *Id.* at 171; *State v. Dickinson*, 2005 ME 100, ¶ 8, 881 A.2d 651; *see also United States v. Glover*, 755 F.3d 811,

820 (7th Cir. 2014) (stating that the showing must satisfy a "burden of production"). Unless the defendant adequately explains why he cannot do so, that showing is made in the form of "[a]ffidavits or sworn or otherwise reliable statements of witnesses." *Franks*, 438 U.S. at 171. The supporting material must contain information that is "more than conclusory and must be supported by more than a mere desire to cross-examine." *Id.*

[¶22] The motion court must then determine whether the defendant has made a showing sufficient to trigger a *Franks* hearing. That determination is generally based on the affidavit or other documentary material filed in support of the motion. *Dickinson*, 2005 ME 100, ¶ 19, 881 A.2d 651 ("This preliminary inquiry requires the court to consider the warrant affidavit and the defendant's written submissions . . . ."). It has been recognized, however, that it is "not always easy to draw the *Franks* line between sufficient and insufficient showings" based on the documentary materials submitted by the accused. *See United States v. McMurtrey*, 704 F.3d 502, 509 (7th Cir. 2013). Consequently, the motion court is authorized, as a matter of discretion, to give the accused an opportunity "to supplement or elaborate on [the] original submissions." *Id.*

[¶23] The forum for this opportunity is a "pre-*Franks*" hearing that serves the narrow purpose of allowing the court to determine whether the defendant can make the showing necessary to warrant a full *Franks* hearing. *Id*. at 509-510; *Glover*, 755 F.3d at 821. The purpose and scope of any such preliminary hearing is not to provide the prosecution with an opportunity to clarify information in the warrant application or to explain any discrepancies or contradictions that bear on issues of veracity affecting the warrant affidavit. *See McMurtrey*, 704 F.3d at 504.

[¶24] Here, the court stated that it chose to hold a preliminary hearing to inform its determination of whether Thompson would be entitled to a full *Franks* hearing. As it was carried out, however, the hearing, held over Thompson's objection, constituted a vehicle for the State to respond to the challenges asserted in Thompson's written motion rather than as a forum for Thompson to supplement or enhance the information that he had already submitted in support of his motion for a *Franks* hearing.

[¶25] This is demonstrated by the court's ruling, after the court listened to Agent Milligan's explanation of challenged portions of the affidavit, that it contained no "deliberate material falsity." The court made that ruling without providing any opportunity for Thompson to test the State's evidence or to

present his own evidence to support the substantial preliminary showing that he was required to present. For example, during the course of the State's direct examination of Milligan and without giving Thompson an opportunity to cross-examine, the court ruled that it was denying Thompson's motion for a full *Franks* hearing. Further, the court declined to consider an audio recording, offered into evidence by Thompson, of the controlled drug buy involving SOI #1, which was the basis for Thompson's assertion that Milligan misrepresented the participants' conversation in the warrant affidavit.

[¶26] The court erred by holding a pre-*Franks* hearing that, in process and purpose, did not allow Thompson to attempt to meet the burden of production necessary for a full *Franks* hearing. In effect, the court converted the preliminary hearing into the beginning of a full *Franks* hearing, and we must vacate the order denying Thompson's motion for a *Franks* hearing.[7] Because the court entered that order based in part on Milligan's partial testimony, we remand for the court to hold a full *Franks* hearing— encompassing the remainder of Milligan's testimony, including Thompson's cross-examination of him, and other evidence the parties wish to present—

---

[7] In the past, we have reserved ruling on whether we review the denial of a motion for a *Franks* hearing for clear error or on a de novo basis. *See State v. Boutilier*, 2011 ME 17, ¶ 1 n.1, 12 A.3d 44. We need not address that issue here, because our decision is the same under either standard.

rather than for the court to determine merely whether Thompson's pre-hearing submissions constitute a substantial preliminary showing. *See McMurtrey*, 704 F.3d at 504 ("[T]he court should not give the government an opportunity to present its evidence on the validity of the warrant without converting the hearing into a full evidentiary *Franks* hearing, including full cross-examination of government witnesses.").

[¶27]  We emphasize that our remand instruction for the court to conduct a full *Franks* hearing does not suggest any determination about whether Thompson made the substantial preliminary showing that is ordinarily required as a predicate to such a hearing.  Rather, given the unusual procedural posture of Thompson's motion, where the court began the testimonial process and ruled based in part on Milligan's partial testimony, a full hearing is the only available course for Thompson's contentions to be considered properly.

B.    Motion for Discovery

[¶28]  Thompson also argues on appeal that the court erred when it summarily denied his motion for sanctions, which was based on his assertion that the State had not produced certain information and material through

discovery. *See* M.R. Crim. P. 16(d).[8] Because we remand the matter for further proceedings, we do not reach this issue. Thompson will now be entitled to a full *Franks* hearing. Therefore, the court will have an opportunity to revisit the discovery issue to determine, based on the change in the posture of the case, whether any "appropriate action" is warranted on the motion. *See* M.R.U. Crim. P. 16(e).

The entry is:

> Judgment vacated. Remanded for further proceedings consistent with this opinion.

---

[8] Thompson initially filed a "request for additional discovery" pursuant to Maine Rule of Criminal Procedure 16(b), in which he sought a court order requiring the State to produce certain discoverable materials. Rule 16(b), however, merely created a mechanism for a defendant to request discovery material directly from the State without judicial intervention, even though the court treated the Rule 16(b) submission as a motion and denied it. Later, Thompson filed a "request for sanctions." In substance, this filing was a motion that implicated Rule 16(d), which allowed a defendant to seek a court order of "[s]anctions for [n]oncompliance" with discovery obligations. M.R. Crim. P. 16(d).

We further note that in its brief on appeal, the State represented that it had provided the requested discovery. The near-nonexistent record on the discovery issue would make it difficult to determine whether the court's denial of Thompson's motion exceeded its "substantial deference in overseeing the parties' discovery," which, to warrant relief on appeal, requires a showing that the effect of the order "is so significant as to deprive him of a fair trial." *State v. Silva*, 2012 ME 120, ¶ 8, 56 A.3d 1230. Nonetheless, we do not reach the merits of Thompson's argument.

Jamesa J. Drake, Esq. (orally), Drake Law, LLC, Auburn, for appellant David Thompson

Janet T. Mills, Attorney General, and Leanne Robbin, Asst. Atty. Gen., (orally), Office of the Attorney General, Augusta, for appellee State of Maine

Oxford County Superior Court docket number CR-2014-54
FOR CLERK REFERENCE ONLY