STATE OF MAINE
CUMBERLAND, ss.

UNIFIED CRIMINAL DOCKET
SUPERIOR COURT
DOCKET NO. CUMCD-CR-2020-3135

STATE OF MAINE

v.

JONATHON BURT,

Defendant.

)
)
)
)
)
)
)
)
)
)
)
)

**ORDER ON DEFENDANT'S MOTIONS
TO SUPPRESS**

Before the Court is Defendant Jonathon Burt's Motion to Suppress Illegal Arrest, Motion to Suppress Search and Seizure, Motion to Suppress Statements Made to Law Enforcement, Motion to Suppress/Exclude Statements Made to Medical Personnel, and Motion to Suppress Warrantless Blood Draw.

A hearing was held on May 24, 2021. The State presented the testimony of Deputy Tyler Leach of the Cumberland County Sherriff's Office; Officer Samuel Coyne of the Portland Police Department; and Officer Jessica Ramsay, a law enforcement phlebotomist with the South Portland Police Department. The Court admitted into evidence seventeen exhibits: S1-S10 (photographs of Deering Oaks Park), S11 (blood draw consent form signed by Jonathon Burt), S12 (certification of blood withdrawal signed by Officer Ramsay), S13 (Officer Thien Duong's affidavit in support of warrant to search Mr. Burt's medical records), S14 (Officer Duong's affidavit in support of warrant to search vehicle), S15 (one hour, seven minutes, and nine seconds of recorded footage from Officer Coyne's body camera on July 26, 2020), S16 (one hour, twenty-six minutes, and six seconds of recorded footage from Officer Coyne's body camera on July 26, 2020), and D1 (Portland

Page 1 of 13

Police Vehicle Inspection Report). The Court makes the following findings of fact and conclusions of law.

## I.      Findings of Fact

On July 26, 2020, at around 5:30 p.m., Deputy Leach observed a blue 2006 Hyundai Sonata ("the Vehicle") enter Deering Oaks Park ("the Park") in Portland, Maine, from State Street. The Vehicle, which had been traveling in the wrong lane of State Street, drove over a curb, struck a small sapling, and proceeded to drive the wrong way down a roadway in the Park. Deputy Leach then observed the Vehicle hit a set of bleachers and propel a person who had been sitting on the bleachers into the air. The person was later identified as Celestin Muhizi. The Vehicle continued up a slight hill, descended down the other side of the hill, and came to a stop after colliding with a piece of playground equipment. When Deputy Leach caught up to the Vehicle, the Vehicle was still running and its tires were spinning. The Vehicle had extensive damage. Deputy Leach saw a male, later identified as Mr. Burt, slumped over in the driver's seat with his seatbelt on, and a female passenger slumped over in the front passenger seat.

Deputy Leach opened the front driver's side door of the Vehicle, removed Mr. Burt's foot from the accelerator, and put the Vehicle in park. Deputy Leach removed Mr. Burt and the passenger from the Vehicle and laid them on the ground. Based on his experience, Deputy Leach believed that Mr. Burt was experiencing the effects of an opioid overdose.

Shortly thereafter, Officer Coyne and several other officers arrived on the accident scene. Officer Coyne briefly spoke with people attending to Mr. Muhizi, who had sustained serious injuries to his head and arm, before continuing on foot to the Vehicle. Officer Coyne had been trained to recognize signs of an overdose and to administer naloxone nasal spray ("Narcan"). He has witnessed, in his estimation, between forty and

fifty overdoses. Officer Coyne observed that Mr. Burt was unconscious and that his complexion was purple. Recognizing these as signs of an opioid overdose, Officer Coyne administered a dose of Narcan to Mr. Burt. Officer Coyne testified that Narcan "blocks" the effects of opioids. Mr. Burt began exhibiting a faint pulse and agonal breathing roughly two minutes later. Mr. Burt was administered a second dose of Narcan. Roughly five minutes after receiving a second dose of Narcan, Mr. Burt regained consciousness.

Immediately after Mr. Burt regained consciousness, officers asked for his name and date of birth. Mr. Burt initially provided the name "Jamie Burt" and an incorrect date of birth. Officers also asked Mr. Burt whether the Vehicle belonged to him. Officer Coyne told Mr. Burt that he would not be going to jail that day, mistakenly believing that officers could not arrest Mr. Burt because he had experienced a suspected overdose. Mr. Burt repeatedly asked if he could stand, and officers repeatedly told him to remain seated.

While waiting for medical personnel to arrive, officers denied Mr. Burt access to his belongings in the Vehicle. Officers did give Mr. Burt a bottle of water at the accident scene. Mr. Burt spoke briefly with medical personnel and signed a refusal for medical transport. Mr. Burt was placed under arrest, handcuffed, and placed by Officer Coyne in a police cruiser for transport to Maine Medical Center ("MMC"). On the way to MMC, Officer Coyne verified Mr. Burt's correct name and date of birth, but asked no other questions of Mr. Burt.

Officer Coyne escorted Mr. Burt into MMC. In triage, Mr. Burt was placed on a bench. Mr. Burt appeared emotional and stated that he was confused. At one point, he said that he was having difficulty breathing. Although emotional, Mr. Burt was alert and his speech was coherent the majority of the time. Mr. Burt was aware that he was at a hospital. Medical personnel inquired about "what happened to [him]," whether he had any injuries, and whether he was under the influence of drugs or alcohol. Mr. Burt

answered the questions. Officer Coyne did not ask Mr. Burt any questions. Less than half an hour later, Mr. Burt was taken to a private room. Shortly thereafter, Officer Coyne intentionally turned off his body camera. Officer Coyne was unable to explain why he turned off his body camera.

Officer Ramsay received a call while off-duty requesting that she come to MMC to draw a blood sample from Mr. Burt. Officer Ramsay was in plain clothes, without a body camera. Upon her arrival at MMC, Officer Ramsay joined Officer Coyne and Mr. Burt in the private room. There is no body camera footage of Officer Ramsay's interaction with Mr. Burt.

Before drawing Mr. Burt's blood, Officer Ramsay explained that in order to draw his blood, she needed his consent. Mr. Burt was not informed of the option to have a physician perform the blood draw. Officer Ramsay testified that Mr. Burt verbally indicated that he would consent to a blood draw. Mr. Burt was cooperative throughout the process. Officer Ramsay provided Mr. Burt with a consent form, which Mr. Burt signed.

Officer Ramsay testified that while she was preparing for the blood draw, she noticed recent needle marks on Mr. Burt's arm. She asked whether he had had blood drawn before. Mr. Burt stated that he had recently relapsed. Officer Ramsay testified that Mr. Burt did not appear unaware of time or place. Officer Ramsay drew Mr. Burt's blood at 7:10 p.m. After being medically cleared, Mr. Burt was escorted out of MMC. Mr. Burt was not advised of *Miranda* warnings at any point at the accident scene or at MMC.

Mr. Muhizi later succumbed to his injuries. Mr. Burt was indicted on eight counts: Manslaughter, Aggravated Criminal OUI, Causing Death While License Suspended or Revoked, Reckless Conduct with a Dangerous Weapon, Criminal OUI, Operating After Suspension, and two counts of Violation of Condition of Release.

## II. Conclusions of Law

Mr. Burt has filed five separate motions to suppress. The Court will address each motion in turn.

### A. Motion to Suppress Illegal Arrest

In his Motion to Suppress Illegal Arrest, Mr. Burt seeks suppression of all evidence obtained following his arrest, on the grounds that law enforcement lacked probable cause to arrest him. Probable cause to arrest exists if facts known or reasonably believed by the officer or officers "would warrant a prudent and cautious person to believe that the arrestee did commit or is committing [a] felonious offense." *State v. Journet*, 2018 ME 114, ¶ 15, 191 A.3d 1181 (quoting *State v. Parkinson*, 389 A.2d 1, 8 (Me. 1978)).

Here, Deputy Leach personally witnessed the Vehicle drive erratically through the Park and collide with a set of bleachers, sending a person seated on the bleachers into the air. He found Mr. Burt in the driver's seat of the Vehicle, unconscious, with his foot on the accelerator. Based on his experience, Deputy Leach believed that Mr. Burt was experiencing the effects of an overdose. When Officer Coyne arrived on the scene, he, too, recognized signs of an overdose in Mr. Burt, including unconsciousness and a purple complexion. Roughly two minutes after Mr. Burt was administered a first dose of Narcan, he began to exhibit agonal breathing and a faint pulse. Minutes after receiving a second dose of Narcan, he awoke. At that point, the facts known and reasonably believed by the officers would warrant a prudent and cautious person to believe that Mr. Burt had committed a felony. Thus, the Court finds that the arrest of Mr. Burt was supported by probable cause.

### B. Motion to Suppress Search and Seizure

In his Motion to Suppress Search and Seizure, Mr. Burt seeks suppression of evidence obtained pursuant to two search warrants granted on August 24, 2020, for Mr.

Burt's medical records and the vehicle involved in the incident. Mr. Burt argues that, within the four corners of the affidavit accompanying the search warrants, there is not a factual basis to support a finding of probable cause to search.

Article I, section 5 of the Maine Constitution provides:

> The people shall be secure in their persons, houses, papers and possessions from all unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without a special designation of the place to be searched, and the person or thing to be seized, nor without probable cause—supported by oath or affirmation.

*See also* U.S. Const. amend. IV. When reviewing a search warrant to determine whether it was supported by probable cause, the Court may consider only "the information within the four corners of the affidavit," and must view that information in a positive light. *State v. Thompson*, 2017 ME 13, ¶ 16, 154 A.3d 614 (quoting *State v. Simmons*, 2016 ME 103, ¶ 12, 143 A.3d 819). "Probable cause exists when, based on the totality of the circumstances, 'there is a fair probability that contraband or evidence of a crime will be found in a particular place.'" *State v. Samson*, 2007 ME 33, ¶ 12, 916 A.2d 977 (quoting *State v. Wright*, 2006 ME 13, ¶ 8, 890 A.2d 703).

**1. Medical Records**

On August 24, 2020, the District Court (Portland, *French, J.*) issued a warrant to search Maine Medical Center for Mr. Burt's medical records.[1] The affidavit in support of the search warrant was prepared by Officer Duong and included the following information: (1) a description of the Vehicle and Deputy Leach's observations of the Vehicle driving erratically on State Street and in the Park before hitting the bleachers; (2) a witness's observations of the Vehicle driving erratically in the Park; (3) Deputy Leach's

---

[1] The State concedes that there is a typographical error in section III, paragraph 15 of Officer Duong's affidavit, which states that the medical records sought are those for Celestin Muhizi. However, review of the affidavit as a whole makes clear that the records sought are, in fact, those for Mr. Burt.

observations that Mr. Burt appeared to be experiencing an overdose, based on his experience and training; (4) Officer Duong's observations, based on review of Officer Coyne's body camera footage, of Mr. Burt's breathing and pulse before and after administration of Narcan; (5) the fact that Mr. Burt was brought to MMC to be medically cleared. Reading the affidavit in a positive light and making all reasonable inferences from the information contained therein, the affidavit establishes a fair probability that Mr. Burt's medical records would be found at MMC and contain evidence of a crime.[2] Thus, the four corners of Officer Duong's affidavit contain information sufficient to support a finding of probable cause.

### 2. Vehicle

On August 24, 2020, the District Court issued a warrant to search the Vehicle. The affidavit in support of the search warrant for Mr. Burt's medical records was prepared by Officer Duong and contained information identical to the affidavit supporting the warrant to search Mr. Burt's medical records. Reading the affidavit in a positive light and making all reasonable inferences from the information contained therein, the affidavit establishes a fair probability that the Vehicle contained evidence of a crime. Thus, the four corners of Officer Duong's affidavit contain information sufficient to support a finding of probable cause to search the Vehicle.

### C. Motion to Suppress Statements Made to Law Enforcement

In his Motion to Suppress Statements Made to Law Enforcement, Mr. Burt seeks suppression of all pre-*Miranda* warning statements made to law enforcement. "A person

---

[2] Mr. Burt asserts that the affidavit omits certain information, including that officers did not require Mr. Burt to perform standard field sobriety tests, no "drug recognition expert" evaluated Mr. Burt at the accident scene, and that Deputy Leach could not immediately tell whether a mechanical defect may have contributed to the accident. The omission of these details is inconsequential because even if the omitted information had been included, the affidavit would still establish probable cause.

who is in custody and subject to interrogation must be advised of the rights referred to in *Miranda v. Arizona* in order for statements made during the interrogation to be admissible against [him] as part of the State's direct case at trial." *State v. Bridges*, 2003 ME 103, ¶ 23, 829 A.2d 247; *see Miranda v. Arizona*, 384 U.S. 436, 478-79 (1966). Thus, Mr. Burt's unwarned statements to law enforcement may be suppressed if Mr. Burt was in custody and subject to interrogation at the time the statements were made.

**1. Custody**

A person is in custody if he is subjected to (1) a formal arrest, or (2) "a restraint on freedom of movement to the degree associated with a formal arrest." *State v. Bryant*, 2014 ME 94, ¶ 10, 97 A.3d 595 (quoting *State v. Michaud*, 1998 ME 251, ¶ 4, 724 A.2d 1222). To determine whether a defendant was restrained to the degree associated with a formal arrest, the court must determine whether "a reasonable person in the defendant's position would have believed he was in police custody." *Michaud*, 1998 ME 251, ¶ 4, 724 A.2d 1222. In making this determination, the court may consider:

> (1) the locale where the defendant made the statements;
>
> (2) the party who initiated the contact;
>
> (3) the existence or non-existence of probable cause to arrest (to the extent communicated to the defendant);
>
> (4) subjective views, beliefs, or intent that the police manifested to the defendant, to the extent they would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;
>
> (5) subjective views or beliefs that the defendant manifested to the police, to the extent the officer's response would affect how a reasonable person in the defendant's position would perceive his or her freedom to leave;
>
> (6) the focus of the investigation (as a reasonable person in the defendant's position would perceive it);
>
> (7) whether the suspect was questioned in familiar surroundings;

(8) the number of law enforcement officers present;

(9) the degree of physical restraint placed upon the suspect; and

(10) the duration and character of the interrogation.

*Id.*

From the time he awakened at the accident scene, Mr. Burt was in custody. Even before he was subjected to a formal arrest and placed in handcuffs, a reasonable person in Mr. Burt's situation would have believed he was in custody. Mr. Burt awakened to the presence of multiple police officers at the scene of an accident. He was told that he could not stand up, leave, or access his belongings in the Vehicle. Although he was told that officers would not take him to jail that day, a reasonable person would be aware that he was the focus of the investigation at the accident scene. Thus, Mr. Burt was in custody from the time he awakened at the accident scene.

## 2. Interrogation

A person is subject to interrogation if he is subject to "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." *Michaud*, 1998 ME 251, ¶ 3, 724 A.2d 1222 (quoting *Thompson v. Keohane*, 516 U.S. 99, 107 (1995)). Interrogation encompasses "express questioning or its functional equivalent. . . . [including] any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." *Rhode Island v. Innis*, 446 U.S. 291, 300-01 (1980); *see State v. Fleming*, 2020 ME 120, ¶ 26, 239 A.3d 648. "[B]rief, neutral questions that are not part of an effort to elicit a confession or admission do not constitute interrogation." *Fleming*, 2020 ME 120, ¶ 26, 239 A.3d 648 (quoting *State v. Reese*, 2010 ME 30, ¶ 8, 991 A.2d 806).

As discussed above, Mr. Burt was in custody from the time he awakened at the accident scene. However, Mr. Burt was not subject to interrogation while at the accident scene or MMC. The only questions asked of Mr. Burt at the accident scene were brief, neutral questions seeking basic information including his date of birth and name. Beyond verifying Mr. Burt's name and date of birth, Officer Coyne asked no questions of Mr. Burt on the way to MMC or at MMC in triage. Officer Ramsay's few questions were posed for the purpose of ensuring that the blood draw was performed safely and efficiently. Moreover, her questions could not be reasonably expected to elicit an incriminating response. Beyond the statements in response to neutral questions at the scene of the accident and Officer Ramsay's medical questions, Mr. Burt's statements to law enforcement officers were not made in response to law enforcement's questions. Thus, the Court need not suppress Mr. Burt's pre-*Miranda* warning statements to law enforcement.

### D. Motion to Suppress/Exclude Statements Made to Medical Personnel

In his Motion to Suppress/Exclude Statements Made to Medical Personnel, Mr. Burt seeks suppression of all statements he made to medical personnel at the accident scene and at MMC on July 26, 2020 on the bases that (1) the statements were made before Mr. Burt received *Miranda* warnings and (2) the statements were made to medical personnel for the purpose of diagnosis and treatment. As to the first basis, questions asked by medical personnel were not an "interrogation" because the questions were not initiated or directed by law enforcement. Thus, the statements need not be suppressed for the failure to provide *Miranda* warnings.

As to the second basis for suppression asserted by Mr. Burt, M.R. Evid. 503(b) provides the general rule:

A patient has a privilege to refuse to disclose, and to prevent any other person from disclosing, confidential communications made for the purpose of diagnosing or treating the patient's physical, mental, or emotional condition, including alcohol or drug addiction, between or among the patient and:

> (1) The patient's health care professional, mental health professional, or licensed counseling professional; and

> (2) Those who were participating in the diagnosis or treatment at the direction of the health care, mental health, or licensed counseling professional. This includes members of the patient's family.

The State argues that Rule 503(b) is inapplicable to Mr. Burt's statements to medical personnel because his statements were not made for the purpose of diagnosis or treatment. Rather, the State argues that the statements were made for the purpose of medically clearing Mr. Burt to be admitted to Cumberland County Jail. The Court disagrees with the State's contention that law enforcement's purpose for bringing Mr. Burt to MMC necessarily renders all statements to medical personnel admissible. However, Mr. Burt has failed to identify specific statements that he seeks to exclude or the content of those statements. Just as the Court cannot say that none of Mr. Burt's statements to medical personnel at the accident scene and MMC were made for the purpose of diagnosis and treatment, neither can the Court say that all statements to medical personnel were made for the purpose of diagnosis and treatment. Thus, the Court is unable to rule the totality of these statements inadmissible at this time. The Court reserves further ruling on the admissibility of Defendant's statements to medical personnel should the State and/or Defendant present additional evidence and argument by way of a Motion in Limine in advance of trial.

**E. Motion to Suppress Warrantless Blood Draw**

In his Motion to Suppress Warrantless Blood Draw, Mr. Burt seeks suppression of the results of a blood draw taken at MMC on or about July 26, 2020. A warrantless search

in the form of a blood test is reasonable if the defendant freely and voluntarily consents to the search. *State v. Boyd*, 2017 ME 36, ¶ 10, 156 A.3d 748. The State must prove, "by a preponderance of the evidence, that an objective manifestation of consent was given by word or gesture." *Id.* (quoting *State v. Bailey*, 2012 ME 55, ¶ 16, 41 A.3d 535). Mr. Burt gave Officer Ramsay an objective manifestation of consent to draw his blood verbally and in writing. Mr. Burt has not disputed that his signature appears on the consent form provided by Officer Ramsay. Mr. Burt argues, however, that he did not knowingly and voluntarily consent.

Mr. Burt argues that he lacked capacity to knowingly consent to the blood draw due to his physical condition and emotional condition. Although Mr. Burt appeared emotional upon arrival at MMC and stated that he was confused, he was conscious and alert. He answered and asked questions about the incident. His speech was coherent the majority of the time. He did not appear to be in any significant physical pain. Moreover, Officer Ramsay testified that Mr. Burt did not appear unaware of time or place immediately before the blood draw. The State has met its burden of establishing by a preponderance of the evidence that Mr. Burt knowingly consented to the blood draw.

Mr. Burt argues that he was induced to consent by law enforcement's false promises. Specifically, Mr. Burt points to Officer Coyne's mistaken statement at the accident scene that he would not be taken to jail. This statement was later corrected by officers well before the blood draw. Mr. Burt also points to Officer Coyne's statement: "We've got to get things taken care of on our end, then you'll be given a call." Neither of these statements could reasonably be expected to have induced Mr. Burt to consent to a blood draw.

Mr. Burt further argues that his consent was not voluntarily given because Officer Ramsay failed to inform him of the option of refusing to consent to the blood draw.

Although this fact does cut against a finding that Mr. Burt's consent was voluntarily given, Officer Ramsay testified that Mr. Burt readily cooperated when she asked if he would consent.

Finally, Mr. Burt argues that the totality of the circumstances was coercive. There is no evidence of coercive conduct by the officers. Rather, the evidence shows that Mr. Burt was asked whether he would give his consent and, in response, he readily indicated that he would, both verbally and in writing. Reviewing the totality of the circumstances, the State has met its burden of demonstrating by a preponderance of the evidence that Mr. Burt's consent to the blood draw was voluntarily given.

## III.  Conclusion

For the foregoing reasons, the Court denies each of Mr. Burt's motions.

The Court orders as follows:

1. Defendant Jonathon Burt's Motion to Suppress Illegal Arrest is DENIED.

2. Defendant's Motion to Suppress Search and Seizure is DENIED.

3. Defendant's Motion to Suppress Statements Made to Law Enforcement is DENIED.

4. Subject to the Court reservation of further ruling on the admissibility of Defendant's statements to medical personnel should the State and/or Defendant present additional evidence and argument by way of a Motion in Limine in advance of trial, Defendant's Motion to Suppress/Exclude Statements Made to Medical Personnel is DENIED.

5. Defendant's Motion to Suppress Warrantless Blood Draw is DENIED.

The clerk is instructed to incorporate this Order by reference on the docket.

Dated: __12/3/2021__

_____
MaryGay Kennedy, Justice
Maine Superior Court